UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PETER MANBECK, et al.,

                              Plaintiffs,                     **REPORT AND**
                                                        **RECOMMENDATION**

        -against-
                                              07 Civ. 2642 (CS) (GAY)
EUGENE MICKA, et al.,

                             Defendants.
----------------------------------------------------------------X

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

      Plaintiffs commenced this action pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 and related New York state laws.  Plaintiffs claim that: (1) the Town Defendants discriminated against plaintiffs for prosecuting them for wetland law violations solely because of their race or national origin; (2) the Wetland Laws and the Town Defendants' execution of said laws against plaintiffs violate due process rights guaranteed by the Constitution; (3) the penalties provided for in the violations sections of the Wetland Laws are prohibited by the Excessive Fines Clause of the Eighth Amendment; (4) the Wetland Laws and/or the Planning Board's prosecution of wetland violations deprives plaintiffs' right to a jury in violation of the Sixth and Seventh Amendments; (5)  the Wetland Laws deny the accused to be represented by counsel in violation of the Sixth Amendment; (6) the Wetland laws are unconstitutionally vague; (7) the Wetland Laws are unconstitutionally vague as applied to the individual plaintiffs; (8) the Wetland Laws provide for searches in violation of the Fourth Amendment; and (9) the Town Defendants retaliated against plaintiffs Mary Clark and Wendy Gennimi in violation of

their First Amendment, due process, and equal protection rights.  In addition, plaintiffs

claim that private citizens Eugene and Catherine Micka, Tracy and Paul Taft, and

Andrew and Kathy Weingarten conspired with various town officials to violate plaintiff

Gennimi's due process, equal protection, and Fourth Amendment rights.

On June 8, 2005, plaintiffs filed a first amended complaint under case number

05-CV-4576 ("Manbeck I").  After the court ordered that a second amended complaint

be stricken, plaintiffs' counsel filed a second related action, with the six above-

mentioned private citizens added as defendants.  This second action is the instant

action, filed under case number 07-CV-2642 ("Manbeck II").  The 2005 and 2007 cases

are essentially identical.  For this reason, the Court stayed any discovery in the 2007

case pending the resolution of the 2005 case.  On March 4, 2008, Magistrate Judge

Yanthis recommended that the Court grant defendants' motions for summary judgment

and dismiss all claims against the defendants.  On March 24, 2008, District Judge

Charles L. Brieant adopted in full the Report and Recommendation, granting

defendants' motions for summary judgment.

Presently before this Court are: (1) defendants' motions for summary judgment

to dismiss all claims[1] and (2) plaintiffs' cross-motions for summary judgment against the

Mickas, the Tafts, the Weingartens, and Town Defendants in connection with Wendy

Gennimi's claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure

---

[1] The Town Defendants initially moved to dismiss pursuant to Rule 12(c) of the
Federal Rules of Civil Procedure.  This Court converts said motion to a motion for
summary judgment as explained below.  Defendants Fain and Jay Fain & Associates,
LLC made a motion to dismiss pursuant to Rule 12(b)(6) and/or 12(c) of the Federal
Rules of Civil Procedure, and/or a motion for summary judgment pursuant to Rule 56.
The Court addresses these defendants' motion as a motion for summary judgment.

("FRCP").[2]  For the reasons set forth below, I respectfully recommend that defendants'
motions be GRANTED and plaintiffs' cross-motions be DENIED.


I. **PLAINTIFF'S FACTUAL ALLEGATIONS**

The following facts—taken in the light most favorable to plaintiff—are gleaned
from the parties' statements pursuant to Local Civil Rule 56.1 of the United States
District Courts for the Southern and Eastern Districts of New York, from the pleadings
and from affidavits and affirmations:

A.    The Defendants

The Town of Lewisboro (the "Town") is located in Westchester County, New
York.  At times relevant to this complaint, James Nordgren ("Nordgren") was the Town's
supervisor; Allen Hershkowitz ("Hershkowitz") was an elected councilman on the Town
Board; and William Agresta ("Agresta") was the Town Planner.  The Town regulates
wetland use and development pursuant to Chapter 217 of the Town Code ("Wetland
Laws").  To enforce said Wetland Laws, the Town allegedly sought the assistance of the
Conservation Advisory Council (the "CAC").  Mark Patek ("Patek") was, at all times
relevant to this complaint, chairman of the CAC.  The Town also hired Jay Fain ("Fain")
to be the Town's wetland inspector in August 2002.  Fain is a principal at Jay Fain and
Associates ("JFA"), which allegedly received funds from the Town in connection with
Fain's wetland inspections.  The Town Planning Board ("Planning Board") is responsible

---

[2] Also before this Court are defendants'—Jay Fain and Jay Fain and Associates;
Andrew and Kathy Weingarten; Paul and Tracy Taft; and Eugene and Cathy Micka—
motions for sanctions and costs in connection with their motions for summary judgment.
The undersigned will address these claims in a separate order.

for adjudicating wetland violations issued by the wetland inspector, levy fines for said violations, and issue subdivision and wetland activity permits. The members of the Planning Board ("Members"), at times relevant to this complaint, included Jacqueline Dzaluck (chairwoman) ("Dzaluck"), Joseph Decaminada ("Decaminada"), Freida Halpern ("Halpern"), Maureen Maguire ("Maguire"), and P.J. Rossi ("Rossi").  Margaret Clark is a wetland attorney for the Planning Board.  The Town Building Department ("Building Department") is responsible for issuing building permits, stop work orders, and certificates of occupancy.  At times relevant to this complaint, William Cargain ("Cargain") was the building inspector and Peter Barrett ("Barrett") was the deputy building inspector.[3]

Andrew and Kathy Weingarten (the "Weingartens")

The Weingartens first became involved in the instant matter on June 7, 2004 when they signed a letter to the Planning Board complaining of commercial activity at Ms. Gennimi's home.  On December 2, 2005, Kathy Weingarten called the police to complain that Gennimi's husband was excavating in a protected wetland area that was the subject of an earlier violation.  On December 8, 2005, Kathy Weingarten again called the police, in concern for her own safety, to report that five to six men were at the home of an elderly neighbor.  Sometime in December of 2005, Kathy Weingarten called the deputy building inspector to complain about fence construction in the protected wetland area.  On January 8, 2006, she wrote to Cargain to complain about commercial activity at the Gennimi property.  In March of 2006, she again spoke with Cargain about

---

[3] For clarity the Court refers to the above-listed defendants, excluding Fain, collectively as the "Town Defendants."

4

commercial activity at Gennimi's house.  On March 22, 2006, Kathy Weingarten wrote a letter to Town officials complaining of ongoing commercial activity at the Gennimi property.  On November 6, 2006, Kathy Weingarten complained to the Planning Board that a wall was being built in the protected wetland area at Gennimi's house.  On December 14, 2006, Andrew Weingarten filed a criminal complaint against Mr. Gennimi, alleging that Mr. Gennimi threatened him by stating, "you better mind your own business about my house."

Paul and Tracy Taft (the "Tafts")

The Tafts became involved in the Gennimi matter when they attended a Planning Board meeting concerning the leakage of septic fluid from the Gennimi septic system. Plaintiffs allege that the Tafts subsequently met with Cargain on June 2, 2006 to complain about workers at the Gennimi residence.  After said meeting, on two separate occasions, Wendy Gennimi and then her husband, walked their dog in front of the Taft property.  An argument ensued between Wendy Gennimi and Tracy Taft during the first dog walk.  As a result of Mr. Gennimi's subsequent dog walk, Mrs. Taft filed a complaint for harassment against Mr. Gennimi, and an order of protection was subsequently issued against Mr. Gennimi.

Eugene and Catherine Micka (the "Mickas")

The Mickas' relevant involvement in this matter began when they joined with other neighbors to complain to the Planning Board, in a June 7, 2004 letter written by Kathy Weingarten, that Mr. Gennimi ran a commercial business from his residential property.  Eugene Micka allegedly authored another letter to the Building Department on November 10, 2004, complaining of construction work being done on the Gennimis'

5

house and yard.  Catherine Micka allegedly notified the Building Department on June 9, 2006 that the Gennimis had men working at their residence.  Plaintiffs allege that the Mickas, along with the Tafts and Weingartens, met with Cargain and Margaret Clark on July 15, 2005 to complain about the work taking place at the Gennimis' property.  Tracy Taft also allegedly sought the Mickas "help" in connection with the Tafts seeking an order of protection against Mr. Gennimi.  Subsequently, Eugene Micka allegedly filed a criminal harassment complaint against Mr. Gennimi on December 10, 2005.   On March 19, 2006, the Mickas, allegedly in concert with other neighbors, met with the town building inspector and police chief to complain about alleged commercial activity taking place at the Gennimis' property.  Allegedly, the meeting participants agreed to surveil the Gennimi property to harass the Gennimis and prosecute them for building permit and wetland violations.

     B.    <u>The Plaintiffs</u>

<u>Jay and Carol Durante (the "Durantes")</u>

On March 23, 2005, Fain, responding to a complaint, inspected the Durante property on Autumn Ridge Road.  After the inspection, he determined that the Durantes had cut down trees in a wetland buffer area and deposited the resulting wood chips in a wetland buffer area without a wetland permit in violation of the Wetland Laws.  Fain issued a stop work order.  Fain also issued a notice of wetland activity violation and a Planning Board summons which were served on the Durantes.  The summons included a notice that they had a right to be represented by an attorney at the scheduled hearing. By letter from the Planning Board secretary, the Durantes were advised that they could be represented by counsel at the scheduled hearing, present evidence on their own

6

behalf and cross-examine witnesses.  Carol Durante appeared at the hearing without

her husband and without counsel.  Fain and Carol Durante testified at the hearing.  After

deliberation, the Planning Board adopted a resolution finding that there was no violation

regarding the tree cutting, but found a violation with regard to the depositing of wood

chips in a protected wetland buffer.  The Planning Board assessed a civil penalty of

$500.00 against the Durantes and directed them to prepare and implement a restoration

plan.  The Durantes received the resolution, have never paid the civil penalty, and never

sought judicial review of the decision of the Planning Board.

Lynn and David Guttermuth (the "Guttermuths")[4]

In 2002, the Guttermuths submitted an application to build a pool on their

property on Todd Hill Circle.  As part of the application process, Fain inspected the site

and observed that the Guttermuths had already cleared and stacked some brush on

their property.  As a result, on January 3, 2003, Fain issued a notice of wetland activity

violation.  By summons issued January 31, 2003, the Guttermuths were directed to

appear before the Planning Board.  The summons included a notice that they had a

right to be represented by an attorney at the scheduled hearing.  By letter from the

Planning Board secretary, the Guttermuths were advised that they could be represented

by counsel at the scheduled hearing, present evidence on their own behalf and cross-

examine witnesses.  On April 22, 2003, David Guttermuth appeared at the public

hearing with counsel.  At the hearing, the Guttermuths admitted, through counsel, that

---

[4] The caption in the instant matter identifies these plaintiffs as "Guttermuth" yet
the pleadings identify them as "Gutermuth."  For consistency, the Court refers to them
as "Guttermuth."

work was done in a regulated and deed-restricted area without a permit and offered

information in mitigation.  As a result, the Planning Board imposed a $250.00 civil

penalty and directed that the Guttermuths submit and implement a restoration plan.

The Guttermuths have never sought judicial review or reconsideration of the Planning

Board's determination.

Geoffrey Shaw ("Shaw")

In 2000, the Town Zoning Board of Appeals granted Shaw a special permit

allowing the temporary storage of contractor's equipment on his property.  The permit

was to be renewed every two years; and was in 2002 and 2004.  Prior to the renewal in

2004, Shaw's neighbors complained to the building department that he was storing

equipment and materials not permitted under the special permit.  Based upon the

complaints, Barrett inspected the property in connection with the special permit.  The

building department issued an order to remedy the violation.  Shaw admitted that he

was storing rock, wood chips, and culvert pipe on his property.

After further complaints, Fain issued a notice of wetland activity violation alleging

that Shaw dumped, graded, excavated, and stored construction equipment in a wetland

or wetland buffer area.  The summons included a notice that Shaw had a right to be

represented by an attorney at the scheduled hearing.  By letter from the Planning Board

secretary, Shaw was advised that he could be represented by counsel at the scheduled

hearing, present evidence on his own behalf and cross-examine witnesses.  Shaw then

secured a renewal of his special permit from the Town Zoning Board of Appeals, valid

for a period of six months.

Shaw appeared before the Planning Board on January 25, 2005 without an

8

attorney.  During his appearance Shaw admitted to the grading allegation.  As a result, the Planning Board imposed a $500.00 civil penalty and directed that Shaw submit and implement a restoration plan.  Shaw has never sought judicial review or reconsideration of the Planning Board's determination.

Peter Manbeck ("Manbeck")

On February 26, 2004, plaintiff submitted plans to the Building Department to build a swimming pool.  The plans were approved by the Building Department and stamped with the legend: "pool not to be filled until enclosure is completed."  In October of 2004, Barrett conducted a routine inspection of the work in progress.  During the inspection, Barrett noticed that the Manbecks filled their pool although the enclosure was not yet in place.  Barrett discussed the situation with Mrs. Manbeck and allowed her to temporarily safeguard the pool with orange nylon construction fence until the permanent enclosure was complete.

In February of 2005, Barrett conducted another routine inspection of the ongoing construction.  During the inspection, Manbeck's contractors informed Barrett of the existence of a treehouse on the property.  As a result, Barrett issued an order to remedy because the treehouse had been built without the requisite building permit.  Barrett also advised Manbeck to apply for a building permit.

Fain conducted a routine inspection of the Manbeck property in connection with the application for a building permit for the treehouse.  During the inspection, Fain determined that the treehouse was built in a wetland buffer area without a permit.  As a result, Manbeck was issued with a summons and notice to answer charges of violating the Wetland Laws.  The summons included a notice that Manbeck had a right to be

represented by an attorney at the scheduled hearing.

During an April 28, 2005 inspection of the work in progress, Barrett observed that a fifteen-foot section of the temporary fence had been removed. Barrett immediately posted a stop work order, specifying that no work be done on the premises until the missing fence was replaced. On the same day, Fain issued two additional violation notices for building a shed in the wetland setback without a wetland permit and for the clearing and grading of half an acre of forest within the wetland buffer. In connection with the latter charge, Fain issued another stop work order.

At the hearing on May 10, 2005, Manbeck told the Planning Board that he had removed the treehouse. As a result, that charge was withdrawn. It was also confirmed that the summons and notices for the other two violations had been returned to the Planning Board secretary as unclaimed. During the hearing Manbeck attempted to serve the Members with a federal complaint and the hearing was adjourned. To date the hearing has not been concluded and the Planning Board has not issued any determination in the Manbeck matter.

<u>Wendy Gennimi ("Gennimi")</u>

On September 19, 2002, Fain, in response to neighbor complaints, inspected the Gennimi property on Lower Salem Road. Fain observed that Gennimi was building a stone wall in a wetland area without a wetland permit. Fain issued a stop work order and a summons and notice of wetland activity violation. The summons included a notice that Gennimi had a right to be represented by an attorney at the scheduled hearing. By letter from the Planning Board secretary, Gennimi was advised that she could be represented by counsel at the scheduled hearing. On November 26, 2002,

Gennimi and her husband Mr. Schliman (also "Mr. Gennimi") appeared and admitted that they had worked in the regulated area without a permit.  They apologized and requested that the stop work order be lifted.  The Planning Board adopted a resolution assessing a $1500.00 civil penalty, and directed that Gennimi and Schliman submit and implement a restoration plan and apply for the required wetland permit.

Gennimi failed to pay the civil penalty and failed to submit the required restoration plan.  Mr. Schliman appeared in response to another summons which informed him of his right to be represented by counsel.  Mr. Schliman admitted that the Planning Board's conditions had not been implemented.  As a result, the Planning Board adopted a resolution similar to the previous resolution, but also required that a stone wall be constructed on the property pursuant to a plan approved by the wetland inspector.  A wetland permit for the work was issued and then extended.

Fain conducted a routine investigation of the of the property on May 13, 2004 and observed that Gennimi had failed to comply and was performing additional excavation without the required permit.  Fain then issued a stop work order.

Gennimi appeared on July 27, 2004 pursuant to another summons which informed her of her right to be represented by counsel.   At this time Gennimi requested an adjournment so that she might obtain counsel.  The hearing was adjourned for such purpose.

On October 12, 2004 Gennimi and her husband appeared without counsel.  Mr. Schliman admitted to failing to comply with Planning Board resolutions.  Based upon the admissions, the Planning Board adopted a resolution which found four separate violations and imposed four separate civil penalties totaling $25,000.  Gennimi received

11

the resolution, read and understood it.

Gennimi filed a *pro se* Article 78 proceeding to challenge the amount of the fine imposed.  When directed by the State of New York to appear, Gennimi did not appear. Subsequently, the Article 78 proceeding was dismissed.

In April of 2005, another summons and notice of wetland activity violation was served on Gennimi for allowing sewage from her house to discharge directly into a protected area.  The septic was repaired and the violation was withdrawn.

<u>Mary Clark</u>

On February 17, 2000 Mary Clark was issued a summons and three notices of wetland activity violation for working on two lots with heavy machinery without a wetland permit.  At the public hearing Mary Clark was represented by counsel.  By resolution dated May 9, 2000, the Planning Board determined that Mary Clark committed the above three violations and imposed civil penalties of $12,500 for each lot, totaling $25,000.

Mary Clark challenged the Planning Board's determination and penalty by way of an Article 78 proceeding.  By decision, order, and judgment dated January 9, 2002, the Supreme Court of the State of New York, County of Westchester, overturned the Planning Board's determination and remanded the matter for further proceedings.

Thereafter Mary Clark and the Town entered into a stipulation of settlement resolving all issues related to the wetland violations.  As a condition of the stipulation of settlement, Mary Clark agreed to withdraw her claims in the action against the Town and also agreed to pay a fine in the amount of $7,500.  Allegedly, the Town violated said stipulation of settlement by requiring her to pay $39,000 in taxes in connection with

12

the Town's foreclosure action on Mary Clark's property.  On September 27, 2005, the

Planning Board cancelled a meeting with Mary Clark in which she sought to discuss her

application for a wetland activity permit.

Daniel Pritchard ("Pritchard")

In September of 2002, Pritchard applied for a wetland activity permit to construct

a pool on his property.  Pritchard subsequently appeared before the Planning Board

with counsel.  During the review process, it was discovered that Pritchard's house had

been constructed entirely within the wetland buffer without a permit.  As a result, the

Planning Board requested that Pritchard legitimize his house, or bring it into compliance

with the Wetland Laws.  After Pritchard agreed to legitimize his house, he withdrew his

application for the pool without the Planning Board ever making a decision on the

application.  To this date Pritchard has never been issued a notice of wetland activity

violation.  To this date Pritchard has never challenged any finding of the Planning

Board.

David Oltman ("Oltman")

In August 2001, Oltman met with Agresta to discuss Oltman's proposal to

develop a 113-acre parcel located on Todd Hill Road.  At this time Oltman's proposed

plan called for a thirty-acre parcel for his home, a seventy-acre donation of land for

open space, and subdivision of the remaining acreage into five or six lots.  Agresta

opined that the proposal was reasonable but could take from one to two years for

approval from the applicable boards.

Oltman initially submitted an application to the Planning Board for a subdivision

of two lots.  Before the Planning Board could consider the proposal, he withdrew his

13

application and resubmitted plans to subdivide the parcel into five building lots and incorporate conservation easements over 97.1 acres.  In May of 2003, Oltman prepared a revised subdivision plan that provided for a seventy-acre gift to the Town as open space.  After several revisions, Oltman entered into discussions with the New York City Department of Environmental Protection ("NYC DEP") and by October of 2004 had agreed to sell them a portion of the parcel.  Due to this development, Oltman again withdrew his five lot subdivision application and submitted a new proposed subdivision application for two lots.

On March 22, 2005, the Planning Board adopted a resolution issuing a final subdivision plat approval.  On June 7, 2005, Oltman sold the 103-acre parcel to a private entity, Todd Farm LLC.

## II.  SUMMARY JUDGMENT STANDARD

When the parties present the Court with materials outside the pleadings both in support of and in opposition to a 12(c) motion to dismiss, and said materials are not excluded by the Court, the Court must convert the motion to dismiss to a summary judgment motion pursuant to FRCP 56.  Fed. R. Civ. P. 12(d).  In the present case, the Town Defendants made a motion to dismiss plaintiffs' claims pursuant to FRCP 12(c).  Said defendants and plaintiffs, along with all other parties, have submitted affidavits, memoranda of law, and exhibits.  Furthermore, said parties are on notice that the Court may consider the additional materials they submitted; they discuss in their papers that the Town Defendants' motion to dismiss may be converted to a motion for summary

judgment.  Therefore, the Court converts the Town Defendants' FRCP 12(c) motion to dismiss into a motion for summary judgment.  As such, plaintiffs may not rely on the allegations in their complaint, but must respond to the Town Defendants' motion, by affidavit or other permissible method, with "specific facts showing a genuine issue for trial."  FRCP 56(e).  Plaintiffs did in fact respond to Town Defendants' motion with affirmations and accompanying exhibits.

All other defendants' and plaintiffs' motions are motions for summary judgment. Accordingly, the Court reviews all parties' motions pursuant to the standard for summary judgment.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists.  See LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995).  If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial."  FRCP 56(e).  Where a plaintiff fails to establish an essential element of her claim, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion.

See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party.  See Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994).  Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

## III.  RES JUDICATA AND COLLATERAL ESTOPPEL

The preclusive effect of a prior judgement is dictated by the doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel).  These doctrine preclude parties from contesting matters that they have had a full and fair opportunity to litigate.

The doctrine of res judicata precludes claim(s) "between the same parties or those in privity with them" in subsequent actions when the same claim(s) were the subject of a prior action and "a final judgment [wa]s rendered on the merits." Berlitz Sch. of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 214 (2d Cir. 1980).  In "determining whether two claims are truly duplicative," the Court reviews "the factual predicate of the several claims asserted.  Thus, whatever legal theory is advanced, when the factual predicate upon which the claims are based are substantially identical, the claims are deemed to be duplicative for the purposes of res judicata."  Id. at 215.

"Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior

16

judgment, even if the issue recurs in the context of a different claim." Taylor v. Sturgell,

128 S.Ct. 2161, 2171 (2008) (internal citation omitted).  Thus, even defendants who

have not previously litigated claims against a plaintiff may invoke the doctrine of issue

preclusion (collateral estoppel) to bar claims.  This "[d]efensive use of collateral

estoppel precludes a plaintiff from relitigating identical issues by merely 'switching

adversaries.'" Parklane Hosiery Co. v. Shore, 439 U.S. 331, 329 (1979) (citing Bernhard

v. Bank of Am. Nat. Trust & Savings Assn., 122 P.2d 892, 895 (Cal. 1942)).

  In the present matter, plaintiffs assert that the doctrines of res judicata and

collateral estoppel do not apply to "'the same issues and claims'" arising from Manbeck I

because plaintiffs' filing of a Notice of Appeal divests this Court of subject matter

jurisdiction.  Plaintiffs' argument is erroneous. The filing of a notice of appeal has the

effect of terminating "the district court's consideration and control over those aspects of

*the* case that are on appeal."  N.Y. State Nat. Org. for Women v. Terry, 886 F.2d 1139,

1349 (2d Cir. 1989) (emphasis added) (citation omitted).  The purpose of divestiture of

jurisdiction is to prevent a district court and court of appeals from "assert[ing] jurisdiction

over *a* case simultaneously."  Griggs v. Provident Consumer Discount Co., 459 U.S. 56,

59 (1982) (emphasis added) (citations omitted).  Accordingly, plaintiffs' Notice of Appeal

of Manbeck I divests this Court of jurisdiction over said case, *not* the subsequent case

of Manbeck II.  Thus, claims and issues which repeat are subject to review by this Court

under the doctrines of res judicata and collateral estoppel.

  A. Claims Arising On or Before June 13, 2005

  In the instant case, plaintiffs make the same claims against the same parties,

Town Defendants, Fain, and JFA, involving identical questions of fact and law as

Manbeck I with respect to plaintiffs' causes of action: First, Second ¶ 232, Third, Fourth ¶ 238, Fifth, Seventh, Eighth, Ninth, Tenth, Eleventh, Eighteenth, Nineteenth, and Twenty-Fourth.[5]  The parties fully litigated in Manbeck I said causes of action on their merits pursuant to defendants' motions for summary judgment.  To the extent plaintiffs might have introduced new claims against the Town Defendants, Fain, and JFA which arose from facts occurring on or before Jule 13, 2005, when plaintiffs filed their First Amended Complaint in Manbeck I, these claims too are precluded, by collateral estoppel.  Thus, for the above reasons, it is respectfully recommended that with respect to these claims, defendants' motions should be GRANTED.

     B.    Claims Arising After June 13, 2005[6]

Plaintiffs attempt to revive their equal protection claim to the extent that they contend Nordgren, Cargain, Margaret Clark, Agresta, the CAC, Patek, Fain, Barrett, Dzaluck, DeCaminada, Rossi, Halpern, Maguire, and Hershkowitz pursued wetland violations against plaintiffs, but failed to pursue wetland violations against landowner Adam Rose.  Plaintiffs allege that Dzaluck, DeCaminada, Rossi, Halpern, Maguire, and

---

[5] Plaintiffs' First cause of action refers to "defendants" and does not individually name specific parties.  To the extent that plaintiffs intended to include the Mickas, Tafts, and Weingartens in this claim, plaintiffs must show that these defendants are state actors in order to establish liability.  Plaintiffs can show that private individuals are state actors through one of three tests: compulsion, close nexus/entwinement, or public function.  See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001).  Here, plaintiffs have not asserted facts, or even allegations, to support that the Mickas, Tafts, and Weingartens are state actors.  Thus this Court reviews said cause of action as it pertains to viable defendants. Accordingly, the same analysis applies.

[6] Plaintiffs' Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, and Thirtieth causes of action.

Hershkowitz "advocated that the town not prosecute Adam Rose and his partner in the fall of 2005." However this new event arising with Adam Rose is not "new" and actionable for the plaintiffs. All of the claims plaintiffs make regarding their own land use events—save for those made by Mary Clark below—arose from facts and events which took place before they filed their First Amended Complaint in <u>Manbeck I</u>. Plaintiffs and the above-named defendants fully litigated on the merits the events giving rise to their equal protection claims in connection with Adam Rose in <u>Manbeck I</u>. As such, said equal protection claims are barred by res judicata. For this reason, it is respectfully recommended that defendants' motions should be GRANTED with respect to said claims.

## IV.  FEDERAL CONSPIRACY CLAIMS[7]

Plaintiffs allege the following:

- The Mickas, Tafts, and Weingartens conspired with Fain, JFA, Agresta, the CAC, Patek, Cargain, Barrett, and Margaret Clark to violate plaintiffs' due process rights under the Fifth and Fourteenth Amendments;

- The Mickas, Tafts, and Weingartens conspired with Margaret Clark, Cargain, and Fain to violate Gennimi's due process, rights to Equal Protection and a jury, and rights against excessive fines in violation of the Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments;

- The Mickas, Tafts, and Weingartens conspired with past and current

---

[7] Plaintiffs' Second ¶ 231, Fourth ¶ 239, Sixth, Twentieth, and Twenty-First causes of action; Complaint ¶ 213.

Members, Nordgren, Agresta, the CAC, Patek, Fain, and Margaret Clark
to deprive plaintiffs of their due process rights and rights against excessive
punishment;

•   The Mickas, Tafts, and Weingartens conspired with Margaret Clark,
Cargain, Barrett, Fain, and Members to violate Gennimi's due process
rights in violation of the Civil Rights Act; and

•   The Mickas, Tafts, and Weingartens conspired with Margaret Clark,
Cargain, Barrett, Fain, and Members to violate Gennimi's right to equal
protection in violation of the Civil Rights Act.

Plaintiffs assert that these conspiracy claims are actionable pursuant to 42
U.S.C. §§ 1981, 1983, and/or 1985.[8]  As mentioned above, said claims against the
Town Defendants, Fain, and JFA are barred by res judicata or collateral estoppel.
Thus, the remaining defendants for said claims are the Mickas, Tafts, and Weingartens.

A.   Plaintiffs' 42 U.S.C. § 1981 Claim

Under 42 U.S.C. § 1981, all persons shall have the same right "to make and
enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of
all laws and proceedings."  42 U.S.C. § 1981(a).  To state a claim, a plaintiff must allege
(1) membership in a racial minority; (2) defendants' intent to discriminate on the basis of
race; and (3) discrimination concerning one of the statute's enumerated activities.
Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 1999).

---

[8] Plaintiffs also assert claims pursuant to 42 U.S.C. § 1988 in connection with the
conspiracy allegations.  Section 1988 provides for the prevailing party to receive an
award for attorney's fees in the enforcement of §§ 1981, 1983, and 1985 claims.
Because plaintiffs' predicate claims fail, so do their § 1988 claims.

Here, plaintiffs only assert a § 1981 claim in connection with Gennimi.  While plaintiff Gennimi can claim membership in a racial minority, the record is devoid of evidence of defendants' intent to discriminate.  Plaintiffs' allegations that the Weingartens complained of "transient workers" does not "give rise to a plausible inference of racially discriminatory intent."  Mahmud v. Kaufmann, 496 F. Supp. 2d at 266, 272 (S.D.N.Y. 2007).  Neither does simply making complaints to the Town or asking the Town to prosecute plaintiff.  For the above reasons, it is respectfully recommended that with respect to this claim, defendants' motions should be GRANTED.

     B.    Plaintiffs' 42 U.S.C. § 1983 Claims

In order to state a claim under § 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution of laws of the United States."  Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993).  As the remaining defendants here are private citizens, plaintiffs attempt to satisfy the first element by alleging that the Mickas, Tafts, and Weingartens were engaged in a conspiracy with state actors.  See Koulkina v. City of New York, 559 F. Supp. 2d 300, 318 (S.D.N.Y. 2008).  However, to state a claim of conspiracy under § 1983, the complaint must contain more than mere conclusory allegations.  Dwares, 985 F.2d at 99.

In the instant case, a review of the record fails to support plaintiffs' allegations.  Evidence that defendants spoke with Town officials and complained about plaintiffs' conduct to Town officials is not by itself adequate evidence of a conspiracy.  For the above reasons, it is respectfully recommended that with respect to this claim,

defendants' motions should be GRANTED.

C.    Plaintiffs' 42 U.S.C. § 1985 Claims

The four elements of a § 1985(3) claim are: (1) conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privilege and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.  Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  The conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' actions."  Id. at 1088 (internal citation omitted).

In the instant matter, there are no facts in the record which support plaintiffs' allegations of a conspiracy, let alone a conspiracy motivated by racial animus.  Plaintiffs' own conclusions are insufficient evidence.  For the above reasons, it is respectfully recommended that with respect to this claim, defendants' motions should be GRANTED.


**V.  MALICIOUS PROSECUTION CLAIM**[9]

Plaintiffs allege that the Town, Cargain, and Margaret Clark maliciously prosecuted Gennimi by withholding from Gennimi a building permit; asking defendants the Mickas, the Tafts, and the Weingartens to unlawfully surveil and inspect Gennimi's property; and then prosecuting Gennimi in town court and the Supreme Court of the State of New York, Westchester County.  Plaintiffs assert that said acts violated

_____

[9] Plaintiffs' Twenty-Sixth cause of action.

Gennimi's rights pursuant to the First and Fourth Amendments.

The elements of a New York malicious prosecution claim are: (1) defendant commenced or continued a criminal proceeding against plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) no probable cause for the proceeding existed; and (4) the proceeding was instituted with malice.  Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003).  42 U.S.C. § 1983 malicious prosecution claims are substantially the same as malicious prosecution claims under New York State law.  Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003).  However, because § 1983 only applies to state actors or action "under color or state law," state action is also a necessary element under § 1983.

Plaintiffs assert that the Town Defendants, Cargain, and Margaret Clark, with the Mickas, Tafts, and Weingartens, maliciously and without probable cause prosecuted Wendy Gennimi in town and state court.  In July 2005, Margaret Clark, Cargain, and the Town allegedly initiated a criminal action in Town Justice Court against Gennimi for allegedly operating a commercial business from her residential property.  Plaintiffs' Rule 56.1 Stmnt. of Mat. Facts in Supp. of Plaintiffs' Mot. for Sum. Judgment ¶ 20 [hereinafter "Plaintiffs' Rule 56.1 Stmnt."].  According to the Town Defendants, Gennimi was actually charged with "building and/or repairing a deck without a building permit.  Town Defendants' Reply Memo. of Law at 5.  The Town Defendants assert that a jury found Gennimi guilty of said charges in July of 2008.  Id.  On February 16, 2007, the Town initiated an action in the Supreme Court of the State of New York, Westchester County, Index No. 07-02771, by filing a complaint.  2007 Gennimi Aff., Ex. T.  Said complaint accused Gennimi and her husband of violating stop work orders issued by Cargain, operating a commercial business at their residential property, and violating the Town's

23

wetland law.  Id.  On August 21, 2007, the Honorable Gerald E. Loehr issued a Decision

and Order staying said action pending the resolution of Manbeck I in federal court.  2008

Gennimi Aff., Ex. W-4.

      A.     Claims Against the Mickas, Tafts, and Weingartens

      As mentioned above, defendants' complaints to Town officials about plaintiffs'

conduct is insufficient evidence to establish a conspiracy to render the Mickas, Tafts, and

Weingartens state actors for the purpose of a § 1983 action.  Thus, it is respectfully

recommended that with respect to the malicious prosecution claims against said

defendants, defendants' motions should be GRANTED.

      B.     Claims Against the Town, Cargain, and Margaret Clark

      As to plaintiffs' claims against the Town, Cargain, and Margaret Clark, plaintiffs

failed to submit evidence that the Town Justice Court and Supreme Court proceedings

terminated in Gennimi's favor.  The Town Defendants allege that the Town Justice Court

action terminated *against* Gennimi when a jury found her guilty.  Town Defendants'

Reply Memo. of Law at 5.  Plaintiffs, however, assert that Margaret Clark closed the case

in May 2005, refusing to prosecute the Gennimis.  See, e.g., Plaintiffs' Cross Mot. &

Notice of Cross Mot. for Sum. Judgment in Opp. to Defs. Mickas' Mot. for Sum.

Judgment at 18 [hereinafter "Plaintiffs' Opp. to Mickas"].  In both outcomes asserted

here, the action did not terminate in Gennimi's favor.  Either she was found guilty or no

prosecution ever took place.

      Furthermore, the Supreme Court action has not "terminated" at all.  Judge Loehr

stayed said action pending the outcome of plaintiffs' federal action in Manbeck I.  2008

Gennimi Aff., Ex. W-4.  Thus, plaintiffs' contention that Judge Loehr's decision amounted

24

to a "*de facto* acquittal" is an improper characterization.  See, e.g., Plaintiffs' Opp. to

Mickas at 18.

Thus, as to both the Town Justice Court and Supreme Court actions, plaintiffs

have not submitted evidence that the prosecutions terminated in Gennimi's favor.

Accordingly, it is respectfully recommended that with respect to the malicious

prosecution claims against the Town, Cargain, and Margaret Clark, defendants' motions

should be GRANTED.


**VI.  MARY CLARK'S CLAIMS**[10]

Plaintiffs allege that the Planning Board and Members violated Mary Clark's First

Amendment, due process, and equal protection rights when they refused to review her

application for a wetland activity permit on September 27, 2005 in retaliation of her

joining in Manbeck I as a named plaintiff.  Plaintiffs assert that said defendants also

violated Mary Clark's First Amendment, due process, and equal protection rights when

they forced her to pay taxes on her property on September 6, 2005, contrary to a

stipulation between the parties, in retaliation of Mary Clark's successful Article 78

proceeding against them.

A.    Equal Protection Claim

Plaintiffs do not assert that the Planning Board and Members treated Mary Clark

differently due to her race, religion, gender, or other impermissible classification under

---

[10] Plaintiffs' Twelfth cause of action.  The Court notes that plaintiffs raise several issues in connection with Mary Clark arising prior to June 13, 2005.  As noted above, these claims should be dismissed pursuant to the doctrine of res judicata.

the Equal Protection Clause.  Thus, the theories by which Mary Clark's equal protection

claim could rest are (1) selective enforcement and (2) "class on one."

In order to assert a successful selective enforcement equal protection claim,

plaintiffs must prove that (1) the complainant, "compared with others similarly situated,

was selectively treated; and (2) that such selective treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the

exercise of constitutional rights, or malicious or bad faith intent to injure a person."

LeClair v. Saunders, 627 F.2d 606, 610 (2d Cir. 1980) (citations omitted).  The

discrimination must be intentional or purposeful.  Id. at 609 (citations omitted).

A plaintiff may bring a "class of one" equal protection claim "where the plaintiff

alleges that she has been intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment."  Village of Willowbrook

v. Olech, 528 U.S. 562, 564 (2000).  Unlike a selective enforcement claim, a "'class of

one' claim is not dependent on a [plaintiff's] ability to prove that [she was] disciplined for

an impermissible reason."  Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004).  Rather, this

claim "focuses on whether the official's conduct was rationally related to the

accomplishment of the work of their agency."  Bizzarro v. Miranda, 394 F.3d 82, 88-89

(2d Cir. 2005).  However, "class of one" does not "empower federal courts to review

government actions for correctness."  Id. at 88.

Here, plaintiffs assert that Mary Clark received "selective treatment" because she

asserted her First Amendment rights against the Planning Board and Members when

she filed an Article 78 proceeding and joined in Manbeck I.  Plaintiffs also allege that the

Planning Board and Members intentionally treated Mary Clark differently than others

26

because she brought lawsuits against them.  However, the evidence plaintiffs submit to support these allegations are their own conclusory statements.  Plaintiffs have not offered evidence of similarly situated persons.  They do not describe the type of wetland permit Mary Clark sought or the property subject to that permit.  As such, plaintiffs have not submitted evidence of other persons who sought the same type of permit for the same type of land and how Mary Clark was similar *or* different from them.  In connection with the alleged retaliation subsequent to the Article 78 proceeding, plaintiffs also have not presented evidence of other persons facing foreclosure and their need to pay overdue taxes.  Accordingly, plaintiffs have not established the "similarly situated" element of either the selective prosecution or class of one equal protection claim.  See Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778. 790-91 (2d Cir. 2007) (citation omitted) (granting summary judgment where evidence submitted to prove "similarly situated" was "'sheer conjecture and speculation'").  Thus, it is respectfully recommended that with respect to Mary Clark's equal protection claim, defendants' motion should be GRANTED.

B.   First Amendment Retaliation Claim

In order to succeed on a First Amendment retaliation claim, plaintiff must demonstrate: (1) that the speech or conduct at issue is protected under the First Amendment; (2) that the defendants took adverse action against him; (3) that there was a causal connection between plaintiff's protected conduct and the adverse action; and (4) that the defendants' action chilled the exercise of plaintiff's First Amendment right. See Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (first three elements); Curley v. Village of Suffern, 268 F.3d 73 (2d Cir. 2002) (requirement that the exercise of First

Amendment right is "actually chilled").

Here, plaintiffs assert that the Planning Board and Members  retaliated against Mary Clark for joining in Manbeck I and successfully filing an Article 78 proceeding against them.  However plaintiffs do not submit any evidence that Mary Clark's speech was actually chilled.  The fact that she joined in as a named plaintiff in Manbeck II speaks to the contrary.  Thus, it is respectfully recommended that with respect to this claim, defendants' motion should be GRANTED.

　　　　C.　　Due Process Claim

To the extent plaintiffs assert violations of Mary Clark's due process rights for allegedly violating a 2002 stipulation, plaintiffs do not explain whether they assert a procedural or substantive due process claim, or both.  The case plaintiffs use to support their claim, Village of Willowbrook v. Olech, 528 U.S. 562 (2000), only governs equal protection claims.  Further, plaintiffs do not explain why or how this incident violated Mary Clark's due process rights.  They simply rely on their conclusory statements as evidence.  This type of shotgun approach to litigation cannot withstand summary judgment.

In connection with the Planning Board canceling a hearing for Mary Clark's wetland activity permit, the Court construes plaintiffs' claim as asserting a procedural due process claim.  Nonetheless, whether the claim is procedural or substantive, the same analysis applies.  In order to successfully assert any due process claim in the context of a land use challenge, a plaintiff must satisfy the Williamson ripeness test.  Dougherty v. Town of N. Hempstead Bd. of Zoning, 282 F.3d 83, 88-89 (2d Cir. 2002) (citations omitted).  A plaintiff must show that "(1) the state regulatory entity has rendered a 'final

decision' on the matter, and (2) the plaintiff has sought [a remedy] by means of an available state procedure." Id. at 88 (citing Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 193-95 (1985)). Here, plaintiffs submit no evidence that Mary Clark attempted to reschedule the Planning Board hearing or that the Planning Board made a final decision to deny her permit.  Accordingly, Mary Clark's claim is not ripe for federal review.

Thus, it is respectfully recommended that with respect to Mary Clark's due process claims, defendants' motion should be GRANTED.


## VII.  STATE LAW CLAIMS[11]

As a result of the dismissal of all of plaintiffs' federal causes of action, it is respectfully recommended that the Court should decline to exercise its supplemental jurisdiction over plaintiffs' state causes of action.  28 U.S.C. § 1367(c)(3); Travelers Ins. Co. v. Keeling, 996 F.2d 1485, 1480 (2d Cir. 1993).


## VIII.   CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend that **defendants' motions for summary judgment should be granted** and all claims against defendants **should be dismissed**.  For the reasons that defendants' motions

---

[11] Plaintiffs' Twenty-Second, Twenty-Third, Twenty-Fifth, Twenty-Seventh, Twenty-Eighth, and Twenty-Ninth causes of action.  The Court notes that plaintiffs' heading for the Twenty-Ninth cause of action indicates a First Amendment free speech claim.  Nonetheless, plaintiffs actual pleadings only refer to a New York State constitutional claim.

should be granted, I also respectfully recommend that **plaintiffs' cross-motions for summary judgment should be denied**.


## IX. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(B), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days from receipt of this Report  to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have thirteen (13) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.


Dated: March 5 , 2009
      White Plains, New York

Respectfully Submitted,

_George A. Yanthis_
GEORGE A. YANTHIS, U.S.M.J.

30