UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
PETER C. MANBECK, WENDY GENNIMI, JAY AND
CAROL DURANTE, LYNN AND DAVID
GUTTERMUTH, MARY CLARK, DANIEL PRITCHARD,
GEOFFREY SHAW, DAVID OLTMAN, individually and
on behalf of all others similarly situated,

                         Plaintiffs,

          - against -

EUGENE MICKA, CATHERINE MICKA, ANDREW
WEINGARTEN, KATHY WEINGARTEN, PAUL TAFT,
TRACY TAFT, TOWN OF LEWISBORO, JAMES
NORDGREN, Town Supervisor and former member of the
Town Planning Board, individually and in his official
capacity, ALLEN HERSHKOWITZ, Town Councilman,
individually and in his official capacity, JAY FAIN, Wetland
Inspector, former Wetland Consultant, individually and in his
official capacity, JAY FAIN & ASSOCIATES, LLC,
PLANNING BOARD, JACQUELINE DZALUK,
Chairwoman of the Planning Board, individually and in her
official capacity, JOSEPH DECAMINADA, Member of the
Planning Board, individually and in his official capacity,
FREIDA HALPERN, Member of the Planning Board,
individually and in her official capacity, MAUREEN
MAGUIRE, Member of the Planning Board, individually and
in her official capacity, P.J. ROSSI, Member of the Planning
Board, individually and in his official capacity, VINCENT
VETRANO, Former Chairman of the Planning Board,
individually and in his official capacity, MARGARET A.
CLARK, Planning Board Attorney individually and in her
official capacity, CONSERVATION ADVISORY
COUNCIL, MARK PATEK, Chairman of the Conservation
Advisory Council, individually and in his official capacity,
BUILDING DEPARTMENT, WILLIAM CARGAIN,
Building Inspector, and former Wetland Inspector,
individually and in his official capacity, PETER BARRETT,
Deputy Building Inspector, individually and in his official
capacity, WILLIAM AGRESTA, Town Planner, individually
and in his official capacity,

                     Defendants.

-------------------------------------------------------------------------x

07-CV-2642 (CS)(GAY)

**MEMORANDUM DECISION
AND ORDER
ADOPTING IN PART AND
MODIFYING REPORT
AND RECOMMENDATION**

**Appearances**

Alexandra N. Manbeck, Esq.
Law Offices of Alexandra N. Manbeck
Cross River, New York
*Counsel for Plaintiffs Peter C. Manbeck, Jay Durante,Carol Durante,*
*Lynn Guttermuth, David Guttermuth, Mary Clark, Daniel Pritchard,*
*Geoffrey Shaw, and David Oltman*

Robert I. Goodman, Esq.
Law Offices of Robert I. Goodman
Rye Brook, New York
*Counsel for Plaintiff Wendy Gennimi*

Michael F. Sirignano, Esq.
Law Offices of Michael F. Sirignano
Cross River, New York
*Counsel for Defendants Eugene Micka and Catherine Micka*

Simone Petromelis, Esq.
O'Connor & Petromelis LLP
Latham, New York
*Counsel for Defendants Andrew Weingarten and Kathy Weingarten*

John Polinsky, Esq.
Michael F. Grady, Esq.
Rende, Ryan & Downes LLP
White Plains, New York
*Counsel for Defendants Paul Taft and Tracy Taft*

James A. Randazzo, Esq.
Gelardi & Randazzo LLP
Hawthorne, New York
*Counsel for Defendants Town of Lewisboro, James Nordgren,*
*Allen Hershkowitz, Jacqueline Dzaluk, Joseph DeCaminada,*
*Freida Halpern, Maureen Maguire, P.J. Rossi, Vincent Vetrano,*
*Margaret A. Clark, Conservation Advisory Council, Mark Patek,*
*Building Department, William Cargain, Peter Barrett, and William Agresta*

Daniel E. O'Neill, Esq.
Boeggeman, George, & Corde, P.C.
White Plains, New York
*Counsel for Defendants Jay Fain and Jay Fain & Associates LLC*

2

**Seibel, J.**

Before the Court are Plaintiffs' Objections to the Report and Recommendation of Magistrate Judge George A. Yanthis dated March 5, 2009 (the "R&R"), recommending that this Court (1) grant Defendants' motions for summary judgment seeking the dismissal of all claims in this action, and (2) deny Plaintiffs' cross-motions for summary judgment. (Doc. 104.) For the following reasons, the Court adopts the R&R to the extent that it is consistent with this Order and dismisses in their entirety Plaintiffs' claims against all Defendants.

## I.    BACKGROUND

This case is the latest of three related actions in which Plaintiffs, property owners in the Town of Lewisboro, New York (the "Town"), allege constitutional violations arising out of the Town's regulation of wetland use and development pursuant to Chapter 217 (the "Wetland Laws") and Chapter 220 (the "Zoning Laws") of the Code of the Town of Lewisboro (the "Town Code").[1] Plaintiffs name twenty-five Defendants in the present action, including the Town; Town Supervisor James Nordgren; Town Councilman Allen Hershkowitz; the Town Planning Board; Planning Board Chairwoman Jacqueline Dzaluk; Planning Board members Joseph DeCaminada, Freida Halpern, Maureen Maguire, and P.J. Rossi; former Planning Board Chairman Vincent Vetrano; Planning Board Attorney Margaret A. Clark; the Town Conservation Advisory Council; Chairman of the Conservation Advisory Council Mark Patek; the Town Building Department; Building Inspector and former Wetland Inspector William Cargain; Deputy Building Inspector Peter Barrett; Town Planner William Agresta;[2] Wetland Inspector and

---

[1] The Town Code is available at the Town's website, http://www.lewisborogov.com/TownCode/ (last visited July 23, 2009).

[2] The above-listed Defendants are referred to collectively as the "Town Defendants."

former Wetland Consultant Jay Fain; Jay Fain & Associates LLC;[3] and Plaintiffs' private-party

neighbors Eugene and Catherine Micka, Paul and Tracy Taft, and Kathy and Andrew

Weingarten.[4]  Familiarity with these proceedings is presumed.  The Court will discuss the

procedural posture of this case only as it is relevant to the preclusive effect of the prior actions.

Otherwise, I adopt the statement of Plaintiffs' factual allegations as thoroughly set forth in the

R&R.

Plaintiff Peter C. Manbeck commenced the first action, captioned *Manbeck, et al. v.

Micka, et al.*, 05-CV-4576 ("Manbeck I"),[5] on May 10, 2005.  (Manbeck I, Doc. 1.)  The

Manbeck I plaintiffs filed a First Amended Complaint on June 14, 2005, adding Wendy

Gennimi, Mark Mosello, Jay and Carol Durante, Efrain Cubides, Michael Honig, Lynn and

David Guttermuth, Bruce Cascio, Siro Cortina, Luigi Imperia, Jerilynn Hagan, and Roger

Moister, Jr. as representative plaintiffs, and naming the Town and certain Town officials and

departments as defendants.  (Manbeck I, Doc. 9.)  The Manbeck I First Amended Complaint

asserted twenty-three counts, including: a challenge to the Wetlands Laws as unconstitutionally

vague; causes of action for violations of the Manbeck I plaintiffs' due process and equal

protection rights premised on allegations of selective enforcement and deprivation of the right to

counsel and to call witnesses at the Planning Board hearings relating to the Manbeck I plaintiffs'

---

[3]  Defendants Jay Fain and Jay Fain & Associates LLC are referred to collectively as the "Fain Defendants."

[4]  Defendants Eugene and Catherine Micka, Paul and Tracy Taft, and Kathy and Andrew Weingarten are referred to collectively as the "Private Defendants."

[5]  When citing litigation documents filed in the related actions, the Court will preface the document number with the defined term standing for the related action (e.g., "Manbeck I"). Unless so prefaced, any other litigation document citation is to the docket in this action.

violations; and additional claims under the Hobbs Act, 18 U.S.C. § 1951, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and New York State law, among others.

On September 26, 2005, the Manbeck I plaintiffs moved the Court for leave to further amend the First Amended Complaint to add Mary Clark, Daniel Pritchard, George Shaw, and Goran Djordjeveski as plaintiffs (Manbeck I, Docs. 37, 39), and filed a Second Amended Complaint to this end on September 30, 2005 (Manbeck I, Doc. 50).  At proceedings held on September 30, 2005, Judge Brieant denied the Manbeck I plaintiffs' motion for leave to file a Second Amended Complaint, prompting the commencement of a related action on behalf of Clark, Pritchard, Shaw and Djordjeveski on October 11, 2005, captioned *Clark, et al. v. Town of Lewisboro, et al.*, 05-CV-8644 (the "Clark Action"), asserting virtually identical claims against substantially the same defendants as named in Manbeck I.

Consistent with his earlier oral ruling, Judge Brieant issued a Memorandum and Order dated November 10, 2005, providing, among other things, that the Manbeck I plaintiffs' Second Amended Complaint be stricken from the record on the grounds that the "Court previously denied Plaintiffs' motion to file a second amended complaint," and the Manbeck I plaintiffs had not received leave of Court to do so.  (Manbeck I, Doc. 47.)   Nevertheless, by Endorsement Order dated November 16, 2005, Judge Brieant ordered that the section of the November 10, 2005, Memorandum and Order regarding the Second Amended Complaint be deleted, and that the Manbeck I litigation proceed based on the Second Amended Complaint.  (Manbeck I, Doc. 49.)  Having thus rendered the Clark Action redundant, Judge Brieant, by Order dated January 17, 2006, directed that Manbeck I and the Clark Action be consolidated for all purposes pursuant

to Rule 42(a) of the Federal Rules of Civil Procedure, and that the Manbeck I docket number be used for "[a]ll papers filed and proceedings [t]hereafter conducted in [the consolidated] cases." (Manbeck I, Doc. 55.)

Although the Clark Action had been consolidated with Manbeck I, the Clark Action plaintiffs' moved for leave to amend their complaint in the Clark Action, and Magistrate Judge Yanthis granted the motion on April 19, 2006, by Stipulation and Order.  (Manbeck I, Doc. 84.) Accordingly, on May 2, 2006, the named plaintiffs in the Clark Action filed their First Amended Complaint, adding Conservation Advisory Council Chairman Mark Patek and Building Inspector William Cargain as defendants.  (Manbeck I, Doc. 85.)  The only new claims contributed to the consolidated case by the First Amended Complaint filed in the Clark Action were Clark's First Amendment and equal protection claims alleging that the Planning Board refused to review her application for a wetland activity permit in retaliation for her joining as a named plaintiff in Manbeck I (Clark Action, Doc. 14., Count 13), and claims that the Town Defendants and Fain Defendants conspired to violate the Clark Action plaintiffs' rights to freedom from unreasonable searches (*id*., Count 25).

During the course of discovery in the consolidated action, Plaintiffs claim to have discovered evidence purportedly linking the Private Defendants to a conspiracy with the Town Defendants and the Fain Defendants to violate Plaintiffs' constitutional rights, prompting the Manbeck I plaintiffs to move for leave to file a further amended complaint adding the Private Defendants.  (Manbeck I, Doc. 117.)  Judge Brieant denied the motion to further amend during proceedings held on March 30, 2007, "on the ground that the case ha[d] been pending too long to add additional parties" (Hr'g Tr. 7:20 - 8:2, Mar. 30, 2007), thus prompting Plaintiffs to

6

commence the present action, captioned *Manbeck, et al. v. Micka, et al.*, 07-CV-2642 ("Manbeck II") on March 30, 2007.  (Doc. 1.)  The Complaint in this action asserts thirty causes of action, which are mostly duplicative of those asserted in the previous cases.  The cases being nearly identical, Manbeck II was assigned to Judge Brieant, who referred the case to Magistrate Judge Yanthis for all purposes (Doc. 12), who, in turn, ordered that discovery be stayed pending resolution of Manbeck I.

On March 4, 2008, Magistrate Judge Yanthis issued a Report and Recommendation (the "Manbeck I R&R") recommending that the Court grant the Manbeck I and Clark Action defendants' motions for summary judgment and dismiss all claims against them in both cases. (Doc. 230.)  Specifically, Judge Yanthis made the following substantive recommendations, among others:

- The plaintiffs' claims that the definition of "wetlands" in the Wetlands Laws is unconstitutionally vague on its face and as applied should be dismissed, as five of the six plaintiffs charged with violations had actual knowledge of wetlands on their property before the alleged violations occurred and the sixth, Gennimi, could not challenge the Wetlands Laws as the identification of the wetlands bordering her property was made by the New York State Department of Environmental Conservation, not the Town. (Manbeck I R&R 12.)

- The plaintiffs' claims that the fines levied against them by the Planning Board violated the Eighth Amendment's prohibition against excessive fines should be dismissed, as (1) the plaintiffs failed to cite any authority for the proposition that administrative penalties are subject to the Eighth Amendment; and (2) the plaintiffs failed to establish that the penalties were grossly disproportionate to the gravity of the offense, as five of the six plaintiffs were assessed penalties of $500 or less and the sixth, Gennimi, was only assessed a total of $25,000 because she committed four separate violations and repeatedly failed to remedy her initial infraction and bring her property into compliance with the Wetlands Laws.  (*Id*. 14.)

- The plaintiffs' equal protection claims premised on the Town's failure to pursue wetlands violations against the School District, the Town Highway Department, and Town resident and landowner Adam Rose should be dismissed on the grounds that: (1) municipal liability was not implicated as the plaintiffs failed to allege that Fain was implementing a

policy or custom; (2) the School District and the Highway Department are not similarly situated as neither of them are "a person or property owner" within the meaning of the Wetlands Laws conferring jurisdiction on the wetlands inspector; (3) the plaintiffs failed to satisfy the second prong of the selective prosecution test, as: (a) they did not provide any theory as to why Fain harbored ill feelings against them, (b) they did not claim membership of any uniform race, religion, sex, or affiliation, and (c) plaintiffs had no fundamental right to demand enforcement of the laws against their neighbors; and (4) the plaintiffs did not satisfy the requirements of a "class of one" claim because a wetlands inspector has a rational basis to believe that initiating charges against admitted Wetlands Law violators serves the legitimate goals of the Town.  (*Id.* 15-19.)

- The plaintiffs' Sixth Amendment claims should be dismissed as the plaintiffs were all given notice that the Wetlands Laws permit those charged with violations to be represented by counsel, to present evidence, and to examine any witness.  (*Id.* 19.)

- The plaintiffs' Due Process claims should be dismissed because: (1) none of the plaintiffs alleged that they were charged with violations at the Planning Board hearings that were not contained in their summons and notice of violation; (2) the record was devoid of any evidence that the Planning Board members pre-judged the plaintiffs' liability based on internal violations summaries that were circulated before the hearings; and (3) Gennimi, Durante, and Manbeck did not have a constitutionally protected property interest in the building permits that were affected by the temporary suspensions effected by the issuance of stop work orders.  (*Id.* 19-23.)

- The plaintiffs' Fourth Amendment claims should be dismissed because the Town had a legitimate interest in protecting its wetlands and the plaintiffs had diminished expectations of privacy because all inspections were either done in response to a complaint or as part of a permit process and there was no indication in the record that any of the plaintiffs went to lengths to prevent the visual inspection of their property.  (*Id.* 24.)

- The plaintiffs' conspiracy claims should be dismissed because: (1) their failure to state a claim under 42 U.S.C. § 1983 prohibits conspiracy liability under Section 1983; and (2) their failure to demonstrate some racial or otherwise class-based discriminatory animus prohibits conspiracy claims under 42 U.S.C. § 1985.  (*Id.* 26.)

- The plaintiffs' Hobbs Act and RICO claims should be dismissed for insufficient evidence in the record to support a claim that any defendant conspired with any party to extort money.  (*Id.*)

Judge Brieant adopted the Manbeck I Report and Recommendation in full on March 24, 2008. (Manbeck I, Doc. 240.)  On March 27, 2008, Plaintiffs filed a Notice of Appeal to the Court of Appeals for the Second Circuit.  (Manbeck I, Doc. 242.)

Following the dismissal of all claims in Manbeck I, on June 9 and 10, 2008, the Town Defendants, the Fain Defendants, the Weingartens, the Mickas, and the Tafts  moved separately for summary judgment seeking the dismissal of all claims in Manbeck II.  (Docs. 38, 39, 40, 41, 42, 43, 44.)  From the end of September 2008 through early October 2008, Plaintiffs filed their papers in opposition to Defendants' respective motions and cross-moved for summary judgment against all Defendants.  (Docs. 48, 49, 55, 57, 58, 59, 60, 61, 62.)  Defendants filed their reply papers from late October 2008 through mid-November 2008.  (Docs. 76, 77, 79, 81.)  Plaintiffs filed their reply papers on December 1 and 2, 2008.  (Docs. 86, 88, 89, 90, 91, 92.)

Magistrate Judge Yanthis issued the R&R on March 5, 2009, recommending that Defendants' motions for summary judgment be granted and that Plaintiffs' cross-motions for summary judgment be denied.  (R&R 29-30.)  Specifically, Judge Yanthis made the following substantive recommendations, among others:

- Plaintiffs' claims against the Town Defendants and the Fain Defendants arising from facts which occurred on or before the date the First Amended Complaint was filed in Manbeck I should be dismissed as precluded under the doctrines of res judicata and collateral estoppel.  (*Id*. 17-18.)

- Plaintiffs' federal conspiracy claims against the Private Defendants should be dismissed for failure to produce sufficient evidence of a conspiracy with state actors or discriminatory animus.  (*Id*. 20-22.)

- Plaintiff Gennimi's malicious prosecution claims against the Town Defendants should be dismissed for failure to establish that the underlying actions terminated in her favor.  (*Id*. 22-25.)

•     Plaintiff Clark's equal protection claims against the Town Defendants should be dismissed for failure to produce evidence of similarly situated persons who were treated differently when applying for the same type of permit. (*Id.* 26-27.)

•     Plaintiff Clark's First Amendment Retaliation claim against the Town Defendants should be dismissed for failure to submit any evidence that her speech was chilled. (*Id.* 27.)

•     Plaintiff Clark's procedural due process claim against the Town Defendants should be dismissed on ripeness grounds, as the Planning Board never issued a final decision to deny her permit and Clark never attempted to reschedule the Planning Board hearing. (*Id.* 29.)

Plaintiffs, with the exception of Gennimi, joined in filing Objections to the R&R on March 23, 2009 ("Pls.' Objs."). (Docs. 108, 109, 110.[6]) Gennimi filed Objections to the R&R on March 20, 2009. (Doc. 107.) By Order dated March 31, 2009 (Doc. 112), Gennimi was directed to withdraw her previously filed fifty-five page memorandum of law as violative of my Individual Practices, and to file a memorandum of law in support of her objections of no more than thirty-five pages, which she did on April 7, 2009 ("Gennimi's Objs.") (Doc. 115). By separate letters, Defendants' counsel informed the Court that, in response to Plaintiffs' and Gennimi's Objections to the R&R, they rely on the papers filed in connection with their respective motions for summary judgment before the Magistrate Judge.

On May 29, 2009, the Court of Appeals issued a Summary Order affirming the award of summary judgment in favor of the Manbeck I and Clark Action defendants, concluding that none of the claims in the Manbeck I plaintiffs' over 330 pages of opening briefs had "any merit." *See Manbeck v. Town of Lewisboro*, No. 08-CV-1543, 2009 U.S. App. LEXIS 11524, at *2 (2d Cir. May 29, 2009).

---

    [6] Plaintiffs have the unfortunate habit of filing multiple versions of the same memoranda of law, thereby causing confusion and requiring the Court to review duplicative arguments. Having undertaken such a review, I am satisfied that all relevant objections are addressed in this decision.

## II.   DISCUSSION

### A.   STANDARDS OF REVIEW

#### 1.   Review of Magistrate Judge's Report & Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Parties may raise objections to the magistrate judge's report and recommendation, but they must be "specific," "written," and submitted "[w]ithin 10 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *accord* 28 U.S.C. § 636(b)(1)(C).

Insofar as a report and recommendation deals with a dispositive motion, a district court must conduct a *de novo* review of those portions of the report or specified proposed findings or recommendations to which timely objections are made.  28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").  The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *See* Fed. R. Civ. P. 72 advisory committee's note (b); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008); *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).  In addition, "[t]o the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."  *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2008 U.S. Dist. LEXIS 92267, at *2 (S.D.N.Y. Oct. 31, 2008).

2.      **Summary Judgment**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id*.  On a motion for summary judgment, courts must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks omitted).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party "to present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2); *see Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).  "Where a summary judgment motion is supported or opposed by affidavits, those 'affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated

therein.'"  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008)

(quoting Fed. R. Civ. P. 56(e)).[7]

## B.      THE PRECLUSIVE EFFECT OF MANBECK I

With the exception of Gennimi, Plaintiffs object to the R&R solely on jurisdictional

grounds, arguing that "all claims and issues in this case [, Manbeck II,] are identical to the claims

and issues of the case currently pending before the Second Circuit [in Manbeck I]" and therefore,

"[P]laintiffs' filing of a Notice of Appeal has divested the district court of jurisdiction . . . ."

(Pls.' Objs. 14.)  Plaintiffs argue that Magistrate Judge Yanthis, in considering the preclusive

effect of the decision in Manbeck I, erroneously compared the Complaint in this action to the

First Amended Complaint in Manbeck I, instead of the operative Second Amended Complaint,

as consolidated with the First Amended Complaint in the Clark Action, "thus leading to the

wrongful assertion of jurisdiction over all issues currently pending before the Second Circuit."

(*Id*. 2.)  Therefore, according to Plaintiffs, "the only remaining claims and issues not pending on

appeal and under the district court's jurisdiction involve Ms. Gennimi's allegations that the

---

[7]  In addition to the above, Rule 56.1 of the Local Civil Rules of the United States
District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires
a party moving for summary judgment to submit a statement of the allegedly undisputed facts on
which the moving party relies, together with citation to the admissible evidence of record
supporting each such fact. *See* Local Rule 56.1(a), (d).  Here, Gennimi concedes that her "whole
[Local] Rule 56.1 Statement . . . refers repeatedly to [her] 2007 and 2008 sworn affidavits . . .
which themselves refer to the deposition testimonies and town documents" purportedly
supporting her allegations.  (Gennimi's Reply to Town Defs.' Mot. for Summ. J., filed on
January 1, 2008 (Doc. 88) 2.)  As her Rule 56.1 Statement (Doc. 82) is thus of limited value, the
Court will primarily cite directly to the aforementioned affidavits when discussing the evidence
before the Court.

Town officials conspired with [the Private Defendants] to violate her constitutional rights."[8]  (*Id.* 5.)

Plaintiffs' jurisdictional objection is premised on a fundamental misunderstanding of the impact that a notice of appeal in a related action has on a subsequently filed case asserting duplicative claims.  "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  But such divestiture is only applicable to the case in which the notice of appeal was filed, not a subsequently filed case purporting to attempt to re-litigate the same claims in the district court.  *See Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) ("[R]es judicata and collateral estoppel apply once final judgment is entered in a case, even while an appeal from that judgment is pending.")  Magistrate Judge Yanthis in the R&R did not purport, and I in this Memorandum Decision and Order do not purport, to take any action with respect to Manbeck I, over which the District Court indeed had no jurisdiction during the pendency of the appeal.  But this Court is not divested of jurisdiction over the instant action.  To hold otherwise would render the well established doctrines of res judicata and collateral estoppel meaningless.  Accordingly, I conclude that the Magistrate Judge correctly rejected Plaintiffs' argument that the filing of a Notice of Appeal in Manbeck I divests this Court of subject matter

---

[8]  If, as Plaintiffs now contend, this action was commenced solely for the purpose of asserting Gennimi's remaining claims involving the Private Defendants, then the rambling, 139 page Complaint filed in this case should have been pared down accordingly.  Plaintiffs having failed to do so, the Magistrate Judge issued a separate Order on March 9, 2008, granting the Fain Defendants' motion for costs, attorney's fees and sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, finding that Plaintiffs, through their attorneys, wrongfully attempted to re-litigate claims that had been dismissed in Manbeck I.  (Doc. 105.)

jurisdiction to dismiss the duplicative claims filed in the present action, and will now proceed to determine the extent of preclusion.

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002) (emphasis added).  "New legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 193 (2d Cir. 1985).  "Whether a claim that was not raised in the previous action could have been raised therein 'depends *in part* on whether the . . . facts essential to support the second were present in the first.'" *Marvel Characters*, 310 F.3d at 287 (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)).  Consequently, claim preclusion "does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000).  Application of the doctrine does not depend on the correctness of the prior judgment, as it is well established that "[n]o other evidence can afford strength to the presumption of truth it creates, and no argument can detract from its legal efficacy." *Jeter v. Hewitt*, 63 U.S. 352, 364 (1860) ("[R]es judicata renders white that which is black, and straight that which is crooked.").

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters*, 310 F.3d at 288-89 (citations omitted).  Collateral estoppel applies when:

> '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had

15

a full and fair opportunity to litigate the issue; and (4) the resolution of the
issue was necessary to support a valid and final judgment on the merits.'

*Id.* at 288-89 (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d. Cir. 1998)).  Claims

adjudicated through summary judgment are regarded as final judgments on the merits.  *Colonial*

*Acquisition P'ship v. Colonial at Lynnfield, Inc.*, 697 F. Supp. 714, 718 n.5 (S.D.N.Y. 1988)

(citing *Michelson v. Merrill Lynch, Pierce, Fenner & Smith*, 619 F. Supp. 727, 733 (S.D.N.Y.

1985).

Magistrate Judge Yanthis analyzed the preclusive effect of Manbeck I on the present

action with reference to the First Amended Complaint filed in Manbeck I on June 14, 2005,

reasoning that the Court ordered that the Second Amended Complaint be stricken.  (*See* R&R 2.)

As Plaintiffs correctly point out (Pls.' Objs. 8), however, although the Second Amended

Complaint was originally stricken (*see* Doc. 47), the Court ultimately ordered that the case

proceed on the claims asserted therein (*see* Doc. 49).[9]  Thus, I must determine the preclusive

effect of Manbeck I on the claims asserted in this case with reference to the operative Second

Amended Complaint in Manbeck I and First Amended Complaint filed in the consolidated Clark

Action.  Under the doctrines of res judicata and collateral estoppel, Judge Brieant's order

dismissing Plaintiffs' complaint in Manbeck I precludes Plaintiffs from relitigating: (1) all

claims that were asserted in the Second Amended Complaint filed in Manbeck I; (2) all claims

that were asserted in the First Amended Complaint filed in the Clark Action; (3) all claims that

could have been asserted in the prior consolidated action based on facts existing as of the date

---

[9]  While Plaintiffs are correct regarding which complaints were operative in Manbeck I,
they incorrectly argue that this Court has no jurisdiction over claims in the instant case to the
extent they mirror those in the operative Manbeck I complaints.  As explained above, appellate
review of the Manbeck I claims does not divest this Court of jurisdiction in the instant, separate
action.

16

the last operative complaints were filed (September 30, 2005, for the Manbeck I plaintiffs, and

May 2, 2006, for the Clark Action plaintiffs); and (4) all issues of fact or law litigated by the

parties or their privies that were resolved by Manbeck I.  The dismissal of Manbeck I does not,

however, have preclusive effect on Plaintiffs' claims based on facts occurring after the date the

last operative complaint was filed.  *See Curtis*, 226 F.3d at 139 ("The plaintiff has no continuing

obligation to file amendments to the complaint to stay abreast of subsequent events; [a] plaintiff

may simply bring a later suit on those later-arising claims."); *El v. City of New York*, No. 04-CV-

1591, 2007 U.S. Dist. LEXIS 46443, at *16-17 (S.D.N.Y. June 26, 2007) (collateral estoppel

inapplicable where plaintiff's claim based on facts not before Court in prior action).

Applying these principles to the present action, I adopt the Magistrate Judge's

recommendation that Plaintiffs' First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth,

Tenth, Eleventh, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth,

Nineteenth, Twenty-fourth, and Thirtieth Causes of Action be dismissed, as the same claims

were litigated against the same Defendants in the prior actions, and all of these claims arose from

facts and events which took place before the filing of the First Amended Complaint in Manbeck

I, which the Magistrate Judge relied on as the operative complaint.  Although not addressed by

the R&R, Plaintiffs' Sixth Cause of Action should be dismissed for the same reason.  I likewise

adopt the Magistrate Judge's recommendation that Plaintiffs' race-based conspiracy claims

(Counts Twenty and Twenty-One) be dismissed to the extent they are asserted against the Town

Defendants and the Fain Defendants (*see* R&R 20), as these identical claims were addressed and

dismissed by the decision resolving the prior action (*see* Manbeck I R&R 25-26).[10]

---

[10]  Even if any of the above claims somehow were not precluded by Manbeck I, the Court
of Appeals' affirmance of their dismissal in Manbeck I shows that these claims are without

Moreover, as the operative complaints in the prior consolidated action were actually the Second Amended Complaint filed in Manbeck I on September 30, 2005, and the First Amended Complaint filed in the Clark Action on May 2, 2006, Plaintiffs' Twelfth Cause of Action is also precluded, as Mary Clark's First Amendment, due process, and equal protection claims in the present action were already disposed of on the merits.  (*See* Clark Action, Doc. 14, Count 13.) Upon review of the Manbeck I R&R, it is clear that the Magistrate Judge was aware of the consolidation order (Manbeck I R&R 1), and that Mary Clark was thus a named plaintiff bound by the resolution of the prior action (*id*. 8).  But although the Manbeck I R&R recommended that "all claims against defendants should be dismissed" (*id*. 28), it did not explicitly discuss the facts underlying Clark's claims that the Planning Board failed to review her application for a wetland activity permit on September 27, 2005, in retaliation for her joining in Manbeck I as a named plaintiff.  Nevertheless, "an issue need not have been singled out in a decision for it to have been disposed of by the decision . . . .  It can have been decided sub silentio."  *Parker v. Corbisiero*, 825 F. Supp. 49, 57 (S.D.N.Y. 1993) (plaintiff collaterally estopped from relitigating Fourteenth Amendment due process claim brought under Section 1983 even though "not specifically mentioned in the [prior] court's decision"); *see Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003) (applying principle in habeas corpus context).  Such preclusion is appropriate here, given that Clark, along with her co-plaintiffs, vigorously litigated all of their claims in the prior action, making it clear that the Magistrate Judge's collective analysis of the Plaintiffs' claims was intended to dispose of these claims as well.  Indeed, Clark herself concedes that these claims

---

merit, and thus they would properly be dismissed on the merits in any event.

were ruled upon in Manbeck I, as she argues (erroneously) that they are now under the jurisdiction solely of the Court of Appeals.[11]  (*See* Pls.' Objs. 8.)

Accordingly, only the following claims are not precluded: (1) Gennimi's 42 U.S.C. § 1983 malicious prosecution claims against the Town, William Cargain, and Margaret Clark; (2) Gennimi's federal conspiracy claims against the Private Defendants under 42 U.S.C. §§ 1981, 1983, and 1985; and (3) Plaintiffs' state law claims.

## C.   REMAINING FEDERAL CLAIMS

Turning to Gennimi's remaining federal claims, the Complaint in this action, like its predecessors in Manbeck I and the Clark Action, "sets forth a potpourri of vague and conclusory allegations" via "the sort of 'shotgun pleading' that illustrates . . . utter disrespect for Rule 8 [of the Federal Rules of Civil Procedure] . . . making it extremely difficult to discern the precise nature of the claim[s]." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 625 (S.D.N.Y. 1999).  Construing the Complaint and Gennimi's equally obtuse memoranda of law most favorably to her, the Complaint may arguably be said to raise claims against the Town, Cargain, and Margaret Clark for malicious prosecution in violation of 42 U.S.C. § 1983, based on the commencement of civil and criminal proceedings against Gennimi in Town Justice Court and the Supreme Court of the State of New York, Westchester County (Count Twenty-Six), as these claims are premised on

---

[11]  In the alternative, as Plaintiffs' opposition papers did not address Defendants' motion for summary judgment on Clark's First Amendment, equal protection, and due process claims other than to argue that this Court does not have jurisdiction over them (*see* Docs. 48, 49, 55), these claims could be deemed abandoned.  *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03-CV-6614, 2006 U.S. Dist. LEXIS 7368, at *24 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on claim).  In any event, Clark raises no substantive objections to the portion of the R&R recommending that these claims be dismissed (*see* R&R 25-29), and, having reviewed it for clear error and finding none, I adopt – to whatever extent Clark's claims are not precluded – the Magistrate Judge's recommendation.

19

conduct which only occurred *after* the filing of the last amended complaint in Manbeck I.[12]

Likewise, the Complaint may be construed to assert claims against the Town, Cargain, Margaret

Clark and the Private Defendants for engaging in a conspiracy to cause such malicious

prosecution in violation of 42 U.S.C. § 1983 (Counts Twenty and Twenty-One).[13]  Finally, the

Complaint can be interpreted to assert claims against the Private Defendants for conspiring with

the Town Defendants and the Fain Defendants to harass Gennimi in an effort "to drive her and

her family out of [the Town] on the basis of their race" in violation of 42 U.S.C. §§ 1981 and

1985 (Counts Twenty and Twenty-One).  Judge Brieant denied Gennimi's motion to further

---

[12]  Plaintiffs' memorandum of law effectively concedes that Gennimi's malicious
prosecution claim is the only claim against the Town remaining in this action:

> Insofar that the [C]ourt had determined [in Manbeck I] that the Town did not
> violate Ms. Gennimi's rights . . . when the Town Planning Board imposed
> $25,000 in fines in October 2004, the only remaining issues which are not on
> appeal involve the Town's prosecution of Ms. Gennimi in criminal Town
> Justice Court and in State Supreme Court in February 2007 for the same
> wetland charges that it had pursued before the Planning Board . . . and for
> purported illegal commercial activities.

(Pls.' Objs. 5.)

[13]  Although not discussed in the R&R, to the extent that Gennimi intended to assert a
First Amendment retaliation claim based on the commencement of these proceedings, her claim
must be dismissed, as she failed to allege or "produce[] any evidence showing that [D]efendants'
actions chilled [her] speech or otherwise prevented [her] from speaking." *Williams v. Town of
Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008) (dismissing claim that prosecution for trespass was
undertaken to retaliate against plaintiff for exercising right to free speech and proceeding to
analyze claim as one for malicious prosecution).  Moreover, even if Gennimi had been chilled,
the abundance of evidence establishing probable cause that she violated the Town's Wetlands
Laws and Zoning Laws, discussed *infra*, and the Town's rigorous enforcement of such laws
against Gennimi and the other Plaintiffs prior to the filing of Manbeck I, shows that the Town
Defendants and Fain Defendants would have acted no differently regardless of Gennimi's
protected conduct.  *See Greenwich Citizens Comm. v. Counties of Warren & Wash. Indus. Dev.
Agency*, 77 F.3d 26, 31 (2d Cir. 1996) ("[G]overnmental entities may act properly in furtherance
of legitimate state interests, even though such state action incidentally chills First Amendment
rights.")

amend the operative complaint in Manbeck I to add these claims on the understanding that she

would be permitted to commence a separate related action in order to pursue them.[14]

        1.      **Malicious Prosecution**

Gennimi's malicious prosecution claims against the Town,[15] William Cargain, and

Margaret Clark are premised on several criminal charges filed against her in the Town Justice

Court and one civil action initiated against her in the Supreme Court of the State of New York,

---

[14] At proceedings on March 30, 2007, Judge Brieant asked the Town Defendants' attorney, James Randazzo: "Do you want me to grant the motion [to amend the complaint] and you can make motions against the Complaint or should I have to tell [Gennimi] 'if you want to file a case, you can filed it as a related case, and they can move against it if they so see fit.'" (Hr'g Tr. 7:20-8:2, Mar. 30, 2007 (Doc. 42).)  Randazzo replied: "I would ask that [Gennimi] be required to file as a related case and then we can address the motion to this new complaint . . . ." *Id.*

[15] In addition to the reasons for dismissal set forth below, Gennimi's malicious prosecution claims against the Town must also be dismissed because a municipality may not be held liable under § 1983 for actions of its employees based on a theory of respondeat superior, and Gennimi has failed to provide sufficient evidence that the perceived violation of her constitutional rights resulted from a municipal policy, custom or practice.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Westchester County.[16]  By way of background, I will briefly summarize the chronology of the

proceedings against Gennimi relevant to her malicious prosecution claims.

On May 18, 2005, Cargain, in his capacity as Town Building Inspector, issued Gennimi

an appearance ticket, numbered 04973, notifying Gennimi to appear at the Town Court on June

20, 2005, to answer charges relating to storage of contractor's equipment on the Gennimi

Property without a permit, in violation of Sections 220-18, 220-20, and 220-23A of the Town

Code.  (Manbeck Aff. Ex. RX-10.)  Cargain filed a supporting Information/Complaint, stating

that the charges were based on his personal observation of "trucks, plows, [and] trailers" on the

Gennimi Property during inspections he conducted on May 10, 2005, through May 12, 2005, as

---

[16]  Gennimi also claims that the Private Defendants' criminal complaints against her
husband Victor Schliman – alleging that he harassed and intimidated them – and the
Weingartens' criminal complaint against Gennimi's attorney Alexandra Manbeck – alleging that
she attempted to forcibly serve papers related to this action – constitute malicious prosecution.
(2008 Gennimi Aff. ¶ 17.)  As neither Victor Schliman nor Alexandra Manbeck are parties to
this action, Gennimi has no standing to complain of the filing of these complaints on their behalf.
*See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction . . . can be invoked
only when the plaintiff himself has suffered some threatened or actual injury resulting from the
putatively illegal action." (internal quotation marks omitted)); *see, e.g. Hui Yu v. U.S. Dep't of
Homeland Sec.*, 568 F. Supp. 2d 231, 234 (D. Conn. 2008) ("[J]urisdiction cannot be invoked
solely on the basis of harms to a plaintiff's spouse."); *Burton v. City of New York*, No. 97-CV-
202, 1997 U.S. Dist. LEXIS 19946, at *6-7 (E.D.N.Y. Nov. 28, 1997) (granting motion to
dismiss where plaintiff asserted claims on behalf of his wife); *Kounitz v. Slaatten*, 901 F. Supp.
650, 654 (S.D.N.Y. 1995) (denying standing to spouse where he had no injury in fact to himself).
In any event, these actions could not serve as the basis for malicious prosecution claims because
(1) the fact that Schliman accepted an adjournment in contemplation of dismissal of the charges
in the harassment complaint (2008 Gennimi Aff. ¶ 16; Weingarten Reply 14) prevents him from
establishing that the action terminated in his favor, *see Rothstein v. Carriere*, 373 F.3d 275, 287
(2d Cir. 2004) ("[A]n adjournment in contemplation of dismissal does not produce a 'favorable
termination' . . . not because the defendant has admitted guilt, but because it is a bargained-for
dismissal of the criminal case."); and (2) probable cause existed for the complaint against
Manbeck, as Kathleen Weingarten filed a sworn statement with the Town Police establishing
that Manbeck forcibly attempted service of process at the Weingarten residence. (2008 Gennimi
Aff. Ex. W-5).

well as information he received from "the neighbors on Lower Salem Road," which led him to

believe that "Gennimi [was] conducting a landscaping business from [her] premises."  (*Id.*)

On July 22, 2005, Gennimi was issued an appearance ticket, numbered 04976, notifying

her to appear at the Town Court on August 22, 2005, to answer a charge of "Working Without a

Building Permit" on July 18, 2005, in violation of Section 91-12 of the Town Code.  (*Id.* RX-7.)

Cargain filed a supporting Information/Complaint, also dated July 22, 2005, stating that the

charge was based on his own knowledge acquired by direct observation of the site.  (*Id.*)

On September 15, 2005, Cargain filed an Information/Complaint in the Justice Court for

the Town of Lewisboro, charging Gennimi with knowingly violating a stop work order contrary

to Section 91-23 of the Town Code.  (*Id.*)  Cargain made this accusation on the basis his direct

observation of the Gennimi Property on July 18, 2005, at which time "work was being

undertaken on the reconstruction of the deck of the premises," including "the installation of new

footings, new framing, new decking and drainage work with a trench," notwithstanding the fact

that a stop work order was still in effect and that such stop work orders were "posted

conspicuously on the premises."  (*Id.*)

On February 13, 2007, the Town Board filed a civil complaint against Gennimi and

Schliman in the Supreme Court of the State of New York, Westchester County, Index No. 07-

2771, asserting four causes of action, the first three of which sought declaratory judgments that

Gennimi and Schliman violated various provisions of the Town Code.  (Manbeck Aff. Ex. T.)

The first cause of action was based on the construction of a fence without a permit in violation of

Section 220-12 of the Town Code, as observed by Cargain during an inspection of the Gennimi

Property on November 13, 2006, and, on November 14, 2004, the continued construction of the

fence and removal of the stop work order Cargain had issued, in violation of Section 91-23 of the Town Code.  (*Id*.)  The second cause of action was based on the alleged use of the Gennimi Property "as a storage facility for various landscaping materials and machinery used for [Schliman's] landscaping business" in violation of Section 220-23(A) of the Town Code.  (*Id*.) The third cause of action alleged that Gennimi and Schliman violated Section 217 of the Town Code, which regulates activity on wetlands and watercourses, by failing to obtain an activity permit from the Planning Board or an activity implementation permit from the Wetlands Inspector for the following activities within the buffer of a wetland on the Gennimi Property: (1) construction of a stone wall on November 13, 2006; (2) depositing soil and grading property on December 4, 2006; (3) operating "numerous bulldozers and business trucks" on December 11, 2006; and (4) planting trees on December 11, 2006.  (*Id*.)  The fourth cause of action sought a permanent injunction restraining and enjoining Gennimi and Schliman from further violations of the Town Code.  (*Id*.)

Having identified the relevant proceedings underlying Gennimi's malicious prosecution claims, the Court can now discuss the elements of such a claim under 42 U.S.C. § 1983.  To state a Section 1983 claim for malicious prosecution, the plaintiff must allege the four elements of malicious prosecution under New York state law and a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman v. N.Y. City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).  The elements of malicious prosecution under New York law are: "(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was

no probable cause for the proceeding; and (4) that the proceeding was instituted with malice."
*Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).

a.        **Fourth Amendment Seizure**

As a threshold matter, I must determine whether Gennimi's malicious prosecution claims implicate her Fourth Amendment rights.  "[S]ince the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings."  *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997).  "When the accused is physically detained following arraignment, there can be no question that he has been seized within the meaning of the Fourth Amendment." *Id*. at 945.  Although the Second Circuit has not directly addressed whether or not the issuance of a summons and complaint coupled with the requirement that an individual appear in court, constitutes a seizure, district courts in this circuit have held that it does not.  *See Richardson v. N.Y. City Health & Hosps. Corp.*, No. 05-CV-6278, 2009 U.S. Dist. LEXIS 25247, at *42-43 (S.D.N.Y. Mar. 25, 2009) (no Fourth Amendment "seizure" based on "the issuance of [] summonses, combined with one criminal court appearance"); *Zak v. Robertson*, 249 F. Supp. 2d 203, 208 (D. Conn. 2003) (Fourth Amendment element not satisfied where there was no "traditional arrest or seizure," defendant "picked up the summons and complaint against him at a police station," and "had to attend court on one or more occasions before all charges against him were dropped."); *but see Rohman*, 215 F.3d 216 (Fourth Amendment element satisfied by condition of post-arraignment release requiring defendant to return to court on at least five occasions).  Accordingly, it is uncommon that a civil action will satisfy the constitutional element of a Section 1983 malicious prosecution claim.  *See Washington v. County of Rockland*,

25

373 F.3d 310, 316 (2d Cir. 2004) (holding that civil administrative proceeding could not support

Section 1983 malicious prosecution claim because plaintiffs "were never taken into custody,

imprisoned, physically detained or seized within the traditional meaning of the Fourth

Amendment"); *Zahrey v. City of New York*, No. 98-CV-4546, 2009 U.S. Dist. LEXIS 8177, at

*87 (S.D.N.Y. 2009) ("While this circuit will sometimes entertain [S]ection 1983 malicious

prosecution claims based on civil proceedings, 'such claims must . . . be premised on a violation

of Fourth Amendment rights.'" (quoting *Washington*, 373 F.3d at 317 (alteration in original))).

      Here, in the criminal actions, Gennimi was merely issued appearance tickets to appear in

Town Justice Court to answer misdemeanor charges of violations of the Town's Zoning Laws.

There is no evidence in the record that she was ever physically detained in any way.  Likewise,

there is no evidence that the civil proceedings commenced against Gennimi in Westchester

County resulted in any "seizure" sufficient to satisfy the constitutional element of a Section 1983

action.  Thus, Gennimi's malicious prosecution claims under Section 1983 must be dismissed on

this basis alone.  Despite her attempt to conflate the two, the fact that Gennimi alleges that

Cargain and the Private Defendants conducted unlawful searches of her property in violation of

the Fourth Amendment[17] does not change the fact that the judicial proceedings commenced

---

      [17]  Gennimi's unlawful search claim based on Cargain's and the Private Defendants'
alleged "surveillance" of her property has no merit, as Gennimi fails to offer any evidence that
Cargain or the Private Defendants intruded on her property to conduct a search.  *See Arizona v.
Hicks*, 480 U.S. 321, 328 (1987) ("[M]erely looking at what is already exposed to view, without
disturbing it – is not a 'search' for Fourth Amendment purposes."); *Palmieri v. Lynch*, 392 F.3d
73, 81 (2d Cir. 2004) ("[A] merely visual observation is no 'search' at all." (internal quotation
marks omitted)).  Moreover, there being insufficient evidence to establish that the Private
Defendants were acting as "agent[s] or instruments of the state," *United States v. Bennett*, 709
F.2d 803, 805 (2d Cir. 1983), their alleged surveillance activities simply were not subject to the
requirements of the Fourth Amendment, *see United States v. Abney*, No. 03-CR-60, 2003 U.S.
Dist. LEXIS 15055, at *10 (S.D.N.Y. Aug. 28, 2003) ("The activities of a purely private person
in obtaining evidence . . . are not subject to the constitutional limitations on obtaining

against her – the "gist" of a malicious prosecution claim – were insufficient to constitute a "seizure" as required to pursue such a claim under Section 1983.  *See Murphy*, 118 F.3d at 944. Nevertheless, in an abundance of caution, I will address the alternative grounds for dismissal based on Gennimi's failure to satisfy the state law elements of her claims.

**b.**      **Favorable Termination**

In the R&R, the Magistrate Judge recommended that Gennimi's malicious prosecution claims against the Town, Cargain, and Clark be dismissed on the grounds that she failed to submit evidence that the Town Justice Court and state Supreme Court proceedings terminated in her favor.  (R&R 24.)  Gennimi objects, arguing that "both criminal and civil charges of commercial operations were dismissed unconditionally due to the refusal of the main witness, Mr. Cargain, to testify against Ms. Gennimi and the Town's abandonment of the case." (Gennimi's Objs. 7.)  In light of the considerable difficulty the Court experienced in attempting to determine the dispositions of the underlying actions from the disjointed exhibits and inconsistent statements of fact submitted in support of and opposition to the pending motions, at my direction the Town Defendants' counsel sent the Court a supplemental letter detailing the status of the Town Justice Court and state Supreme Court actions.  (*See* Letter from James A. Randazzo, Esq. to the Hon. Cathy Seibel (June 9, 2009) (the "Disposition Letter") (Doc. 117).)

The Disposition Letter and attached certificate of disposition from the Town Justice Court confirm that the charges relating to working without a building permit in violation of Section 91-12 of the Town Code and violating a stop work order in violation of Section 91-23 of the Town Code were resolved after a jury trial.  The jury found Gennimi guilty and a fine of

---

evidence.").

$350.00 for each violation was imposed.  (*Id.*)  Obviously, this disposition forecloses Gennimi's malicious prosecution claims based on these charges, *see Vasquez v. McPherson*, 285 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("An essential element of a malicious prosecution claim is that the prosecution terminate 'in some manner indicating that the person was not guilty of the offense charged.'" (quoting *Singleton v. City of New York*, 632 F.2d 185, 194-95 (2d Cir. 1980)). Gennimi concedes as much.  (*See* Gennimi's Objs. 11 ("This charge of building a deck without a permit . . . is totally separate and distinct from the prior charge of illegal commercial operations which was the sole basis for Ms. Gennimi's claim of malicious prosecution.")).

Gennimi also cannot satisfy the favorable termination element with regard to the civil action filed in state court.  On August 29, 2007, the state court entered a Decision and Order staying the action pending the completion of the Town Justice Court actions and Plaintiffs' federal actions (the "Stay Order").  (Manbeck Aff. Ex. W.)  On June 17, 2008, the Clerk of Court for the Supreme Court of the State of New York, Appellate Division, Second Department, issued an Order granting the Town Board's application to withdraw its appeal of the Stay Order.  (*Id.*) Gennimi's counsel misconstrues the significance of the Stay Order and the Appellate Division's Order, representing that "the Appellate Division of the State Supreme Court . . . dismissed the whole [civil] action on June 18, 2008."  (*Id.* ¶ 15.)  This representation is false.

Although the state court was authorized to dismiss the case upon finding that there was "another action pending between the same parties for the same cause of action" in another court, N.Y. C.P.L.R. 3211(a)(4), it opted for the "alternative" of a stay, which, by definition, "would not bar further proceedings in New York," *SafeCard Servs., Inc. v. Am. Express Travel Related Servs. Co.*, 610 N.Y.S.2d 23, 23 (App. Div. 1994).  Moreover, the Appellate Divison's order

simply granted the Town Board's application to withdraw its appeal; it did not change the status

of the case, as confirmed by the New York State Unified Court System "eCourts" website, which

shows that the matter remains stayed.  (Disposition Letter.)  Thus, Gennimi's malicious

prosecution claims premised on the state Supreme Court action must be dismissed because the

action is not concluded, let alone in a manner indicative of her innocence.  *See Rothstein v.

Carriere*, 373 F.3d 275, 286 (2d Cir. 2004) (when proceeding does not end in acquittal, plaintiff

must show that abandonment was "a final determination that is or [was] not inconsistent with

innocence."); *accord Murphy*, 118 F.3d at 948 ("Where the prosecution did not result in an

acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its

final disposition is such as to indicate the innocence of the accused."); *Smith-Hunter v. Harvey*,

734 N.E.2d 750, 753 (N.Y. 2000) (Under New York law, "a criminal proceeding is terminated

favorably to the accused when there can be no further proceeding upon the complaint or

indictment, and no further prosecution of the alleged offense." (internal quotation marks

omitted)).

A closer call is presented by the criminal charges in the Town Justice Court relating to

the alleged storage of contractor's equipment without a permit in violation of Sections 220-18,

220-20, and 220-23A of the Town Code (the "Commercial Activity Charges").  According to

Gennimi's counsel, Cargain conducted additional surveillance after the filing of these charges,

leading him to inform Defendant Margaret Clark that the charges should be dropped, and Clark

to write a letter to the Town Justice Court stating that she would no longer prosecute Gennimi.[18]

_____

[18]  Although the record contains a May 26, 2006 letter from Cargain to Clark regarding
the absence of evidence of contractor's equipment being stored on the Gennimi Property at that
time (2007 Gennimi Aff. Ex. Q, discussed *infra* pp. 31-32, 38), the Court has not been provided
with any evidence of the letter Gennimi describes in which Clark allegedly informed the Town

Ultimately, the Commercial Activity Charges were dismissed on April 28, 2008.  (Manbeck Aff. ¶¶ 17-19.)  According to the Town Defendants' counsel, he has confirmed with the clerk of the Town Justice Court and the Town's prosecutor that the Commercial Activity Charges "were withdrawn by the prosecutor without prejudice and the file has been sealed pursuant to § 160.50 of the [New York] Criminal Procedure Law."[19]  (Disposition Letter.)

The distinction between "dismissed" and "withdrawn without prejudice" is significant, as the controlling inquiry is whether the prosecution "ended" in such a manner "as to indicate the innocence of the accused."  *Murphy*, 118 F.3d at 948.  Although there are New York cases standing for the principle that such innocence can be established by "abandonment," and although these cases are "not obsolete," the circumstances in which abandonment may be used to prove favorable termination have been "narrowed" considerably.  *Garrett v. Port Auth. of N.Y. and N.J.*, No. 04-CV-7368, 2006 U.S. Dist. LEXIS 55548, at *15-16 (S.D.N.Y. Aug. 7, 2006); *see O'Brien v. Alexander*, 101 F.3d 1479, 1487 (2d Cir. 1996) (noting "atrophy of the abandonment prong").  Under these more recent cases, dismissal for "legal insufficiency" does not constitute a favorable termination, even when "the prosecution ha[s] not opted to refile the

---

Justice Court that the Town was abandoning these charges.

[19]  Section 160.50 of the New York Criminal Procedure law provides that, "[u]pon the termination of a criminal action or proceeding against a person in favor of such person, . . . the record of such action or proceeding shall be sealed."  N.Y. Crim. Proc. Law § 160.50 (2009).  "But 'favorable termination' for purposes of sealing . . . is considerably broader than 'favorable termination' for purposes of a malicious prosecution claim or the like," *Coakley*, 49 F. Supp. 2d at 623 n.4, and thus the sealing of the file has no relevance to whether Gennimi "should be permitted to pursue a malicious prosecution claim," *Cardi v. Supermarket Gen. Corp.*, 453 F. Supp. 633, 635 (E.D.N.Y. 1978) ("Nothing in the language or history of § 160.50 suggests any intent by the legislature either to change New York's long standing requirement that favorable termination be a precondition for a malicious prosecution claim, or to extend the effect of its 'termination' language beyond its carefully expressed and limited purpose.").

charging instrument," where the action remains capable of being refiled.  *Garrett*, 2006 U.S.

Dist. LEXIS 55548, at *15-16 (citing *MacFawn v. Kresler*, 666 N.E.2d 1359 (N.Y. 1996)).

Accordingly, New York courts have held that the prosecution's voluntary dismissal of criminal

charges without prejudice does not satisfy the favorable termination element of a malicious

prosecution claim absent some "indication that this withdrawal was intended as a formal

abandonment of the proceeding."  *Martin v. Columbia Greene Humane Soc'y, Inc.*, 793

N.Y.S.2d 586, 588 (App. Div. 2005); *see Stay v. Horvath*, 576 N.Y.S.2d 908, 911 (App. Div.

1991) (proceedings not terminated under circumstances implying plaintiff's innocence where

District Attorney withdrew charges).

        Here, Gennimi essentially argues that the voluntary dismissal of the charges relating to

the alleged use of the Gennimi Property to store contractor's equipment for her husband's

landscaping business is indicative of her innocence because of "the refusal of the main witness,

Mr. Cargain, to testify against [her] and the Town's abandonment of the case."  (Gennimi's Objs.

7.)  But the record does not support her assertion that Cargain refused to testify against her.

Although Cargain sent a letter to the Town's attorney Margaret Clark on May 26, 2006, advising

that he did not observe any evidence of storage of landscaping equipment during his inspections

of the Gennimi property in April and May 2006, and would thus cease conducting inspections

(2007 Gennimi Aff. Ex. Q), there is no support in the record for Gennimi's assertion that Cargain

refused to testify regarding his observations of contractor's equipment on the Gennimi Property

prior to April 2006, or urged that the charges be dropped.  Indeed, Cargain's deposition was

taken on March 7, 2007, at which time he openly testified regarding his observations of

landscaping equipment on the Gennimi Property in April and May 2005.  (*See* Cargain Dep.[20] 281:9-283:16, 295:9-296:8, 298:10-15.)  Moreover, the fact that the Town Board filed a separate civil action against Gennimi and her husband on February 13, 2007, alleging, among other things, that the Gennimi Property was being used "as a storage facility for various landscaping materials and machinery used for [Schliman's] landscaping business," establishes that the May 26, 2006 letter was not intended to be a repudiation of the Commercial Activity Charges filed on May 18, 2005, concerning conduct which allegedly occurred during that month.  As Gennimi "bears the burden of establishing that the underlying action terminated in [her] favor," *Garrett*, 2006 U.S. Dist. LEXIS 55548, at *14, and she has failed to provide sufficient evidence that the termination was a formal abandonment of the proceedings indicative of innocence, her malicious prosecution claims premised on the Commercial Activity Charges must be dismissed as well, *see id.* at *19 (dismissing malicious prosecution claims where there was "no evidence that the criminal action was dismissed with prejudice or that the charge could not have been re-filed").

### c.      Probable Cause

Even if the proceedings had terminated in Gennimi's favor, her malicious prosecution claims must be dismissed because probable cause existed for the commencement of the proceedings against her.  *See Douglas v. City of New York*, 595 F.Supp 2d 333, 342 (S.D.N.Y. 2009) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution.").  The test for probable cause looks to the facts and circumstances at the time the proceedings were initiated.  *See Williams*, 535 F.3d at 79 ("Probable cause exists when [one] ha[s] knowledge of, or reasonably trustworthy information as to, facts and circumstances that are

---

[20]  "Cargain Dep." refers to the transcript of the deposition of William H. Cargain, taken on March 7, 2007.  (Doc. 52.)

sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." (alterations in original) (internal quotation marks omitted)); *Levy v. Alfano*, 47 F. Supp. 2d 488, 494 (S.D.N.Y. 1999) ("It is axiomatic that 'probable cause' is determined with reference to the facts known to the citing officer at the time of the citation, not the results of the subsequent criminal prosecution.").

Gennimi objects to the dismissal of her claims relating to the Commercial Activity Charges, arguing that the Magistrate Judge erroneously conflated these charges with the other local zoning law violations of which she was found guilty. (Gennimi's Objs. 11.) Gennimi argues that "a finding of probable cause to arrest as to one charge does not necessarily defeat a claim of malicious prosecution as to other criminal charges that were resolved in the plaintiff's favor." (*Id.* 11 (citing *Janetka v. Dabe*, 892 F.2d 187 (2d Cir. 1989)). Although that principle of law is accurate, Gennimi's reliance on it and *Janetka* is misplaced. That case involved a different issue of law and distinguishable factual circumstances. The district court had dismissed the plaintiff's claim of malicious prosecution on a resisting arrest charge, even though the plaintiff had been acquitted of that offense, on the theory that the acquittal was not a favorable termination because the charge "arose out of events that occurred on the same occasion" as a disorderly conduct charge that resulted in conviction. *Janetka*, 892 F.2d at 189. The Court of Appeals reversed, holding that "an acquittal satisfies the favorable termination requirement even when there has been a conviction on a related charge, or one arising from the same incident or event," reasoning that "the charge for which [the plaintiff] was acquitted was more serious than the one for which he was convicted," and "[a]llowing police officers to add unwarranted misdemeanor charges to valid violation charges may force an accused to go to trial on the

33

misdemeanor when he otherwise would plead to the violation." *Id.* at 190.  As previously

discussed, there was no acquittal of the Commercial Activity Charges here.  But even assuming

that the withdrawal without prejudice constituted a favorable termination, the Commercial

Activity Charges are no more serious than the other zoning law misdemeanors.  Moreover, and,

more importantly, independent probable cause existed for the prosecution of the Commercial

Activity Charges.

      The criminal charges against Gennimi arising out of the alleged operation of a

commercial landscaping business on the Gennimi Property were premised on violations of

Sections 220-18, 220-20, and 220-23(A) of the Town Code.  (Manbeck Aff. Ex. RX-10.)

Section 220-18 provides that "[a]ll buildings, structures and property shall be provided with

unobstructed access for fire-fighting and emergency service personnel, apparatus and

equipment" and that "[d]esignated access roads and fire lanes shall be adequately maintained and

kept free and clear of obstructions at all times by the property owner."  Town Code § 220-18.

Section 220-20 provides that the "[s]torage of household equipment and building materials,

except in connection with a valid building permit . . . is prohibited unless stored in a fully

enclosed building."  *Id.* § 220-20.  Section 220-23(A)(9) provides, in pertinent part, that only

"[t]emporary storage of contractors' equipment" is permitted on property in the residential

district in which the Gennimi Property is located.  *Id.* § 220-23(A)(9).  Such temporary storage is

"subject to special permit approval as set forth in Article V [of the Town Code] and must

conform to any additional requirements in connection with such approval."  *Id.* § 220-23(A).

One such additional requirement regulates "the temporary storage of contractors' equipment on

property owned by the owner or lessee of the equipment which is intended for off-premises use."

*Id*. § 220-38.  According to Section 220-38, the Town's "Zoning Board of Appeals may issue, modify and renew for a period not exceeding two years conditional permits for the temporary parking and/or storage of equipment or machinery commonly referred to as 'contractor's equipment,'" subject to certain "conditions and limitations."  *Id*.

In light of the elements of the underlying violations, it is readily apparent that probable cause existed to bring the Commercial Activity Charges against Gennimi in both the Town Justice Court and the State Supreme Court.  First, it is not disputed that at all times relevant to this action, Gennimi's husband, Victor Schliman, was the owner of Personal Touch Landscaping, a landscaping business servicing residents in the Town.  (*See* 2008 Gennimi Aff. Ex. 1 (June 27, 2005 police report regarding Schliman's landscaping activities).)  Second, there is a long chronology of evidence establishing the Gennimi's husband likely used the Gennimi Property to facilitate the operation of his landscaping business.  From 2000 through 2002, the Building Department began receiving anonymous complaints from "Concerned Residents of Lewisboro" regarding activity on the Gennimi Property, including the presence of commercial landscaping equipment and other activity in the wetlands buffer on June 12, 2001 (2007 Gennimi Aff. Ex. C); the clearing and filling of property abutting the wetlands on September 16, 2002 (*id*. Ex. D); and the presence of building materials, trucks, and workers on Septmber 18, 2002 (*id*. Ex. E).  By 2003, the neighbors began expressing their frustration to Town officials about the construction activity on the Gennimi Property and their suspicions that Gennimi's husband was using the property to store materials for his landscaping business.  For instance, the Mickas wrote a letter to the Planning Board on January 1, 2003, expressing that the "past four years" living next to Gennimi had been "misery," as the Gennimi Property was "in such disarray,"

Gennimi had "filled in the wetlands behind [her] house and [] disturbed nature," and Gennimi's

husband "continues to bring junk and building materials which he says is for his house, when he

is seen around the town and on our road building fences and landscaping under his company

name 'Personal Touch Landscaping.'" (*Id.* Ex. E.)

These complaints were investigated and corroborated by Cargain's observations recorded

in the normal course of his duties as Building Inspector.  For instance, prior to issuing Gennimi

an order to remedy on April 29, 2005, Cargain conducted a site visit of the Gennimi Property and

observed "workmen putting equipment on their trucks."  (Cargain Dep. 281:9-283:16.)  "[D]ue

to the volume of equipment," including "several mowers [and] several blowers . . . for purposes

of doing lawn work," and the fact that the front lawn on the Gennimi Property was "as big as a

postage stamp," Cargain determined that the Gennimi Property was being used to store

equipment for Schliman's landscaping business.  (*Id.*)  On May 1, 2005, the "Lewisboro

residents on Lower Salem Road" sent a letter to the members of the Planning Board complaining

of the "storage of building materials . . . in the rear left section of the [Gennimi] property, within

the 150' buffer of the wetlands."  (2008 Gennimi Aff. Ex. 1A.)  As previously noted, Cargain

filed an Information/Complaint contemporaneously with the filing of the Commercial Activity

Charges, in which he stated that from May 10, 2005, through May 12, 2005, he personally

observed "trucks, plows, [and] trailers" parked on or outside the Gennimi Property without a

permit, thereby blocking access roads and fire lanes to the Gennimi Property and neighboring

homes.[21] (Manbeck Aff. Ex. RX-10.)  On May 25, 2005, Cargain investigated the Complaint by

---

[21]  A building inspector is familiar with access roads and firelanes, as the Town Code
charges him or her, in conjunction with fire district officials, with determining adequate
emergency fire access before the issuance of a building permit.

driving by the Gennimi Property, where he observed a pickup truck leaving the site with "lawn maintenance equipment" aboard.  (Cargain Dep. 298:1-9.)  Cargain also observed a pickup truck being loaded with "lawn equipment" on the Gennimi Property on June 1, 2005.  (*Id.* 298:10-15.)  On May 26, 2005, Cargain observed "piles of . . . Belgian block," "piles of sand," and "big piles of wood chips" on the Gennimi Property.  (*Id.* 295:9-296:8.)

The evidence of commercial activity and unauthorized use of land on the Gennimi Property continued through 2006, at which time the record suggests Gennimi's husband began to move his landscaping business off of the Gennimi Property.  Specifically, an inspection report dated May 4, 2006, memorializes a conversation between Cargain and Gennimi's husband in which Cargain asked whether "he is still running a business from the site," and Schliman responded that "he moved the business" to a different site and "no future plants [would be] added to [the Gennimi Property]."  (2007 Gennimi Aff. Ex. P.)  Nevertheless, a police report establishes that "there were workers laboring at transplanting trees and shrubbery" on the Gennimi Property on May 27, 2006 (2008 Gennimi Aff. Ex. 1B), and Cargain observed that Gennimi was planting trees in the wetland buffer without a permit on July 21, 2006, and using a picket fence "to screen plants for installation on [the] side yard," (*id.* Ex. W-2).  Additionally, in an inspection report dated November 13, 2006, Cargain recorded his observation that Gennimi's

husband had conducted "grading and planting" on the Gennimi Property.[22] (2007 Gennimi Aff.

Ex. S.)

In light of this and other evidence in the record, it is easy to conclude that knowledge and

reasonably trustworthy information existed as to facts and circumstances sufficient to warrant a

person of reasonable caution in the belief that the trucks and other equipment on the Gennimi

Property were obstructing access roads and fire lanes; that Gennimi was storing building

materials without a valid building permit; and that Gennimi was likewise storing contractors'

equipment without a special permit.  Probable cause existing for the Commercial Activity

Charges filed against her, Gennimi's malicious prosecution claims must be dismissed.

To the extent that Gennimi relies on Cargain's May 2006 letter to Margaret Clark – in

which he reported that he did not observe any evidence of contractor storage of landscaping

equipment during his inspections of the Gennimi property in April and May 2006 and would

cease conducting inspections (*id.* Q) – such evidence is irrelevant to the evidence of commercial

activity on the Gennimi Property in May 2005, which provided probable cause to file the

charges.  Even assuming for the sake of argument that the May 2006 letter establishes that

Cargain and Clark mistakenly believed that Gennimi's husband was conducting a landscaping

business without a permit when he was really just overseeing construction and landscaping on

the Gennimi Property without a permit, the elements of the underlying violations are still

_____

[22]  Gennimi's counsel even concedes that, to the extent Cargain observed grading equipment on the Gennimi Property, his report "arguably advanced the charge that Ms. Gennimi was operating a commercial enterprise."  (Manbeck Aff. ¶ 15.)  Her discounting of this report as a mere "single day's surveillance" incapable of establishing a "pattern" of commercial activity is without merit, as the record provides ample evidence of activity on the Gennimi Property over the course of several years sufficient to establish probable cause for the filing of the Commercial Activity Charges.

satisfied by the unauthorized storage of building materials and presence of commercial vehicles on the Gennimi Property.

Gennimi's argument that the Stay Order "clearly establishes that the Town filed a baseless action at the urging of the [Private Defendants] to drive [her] out of town since the same causes of action were already pending in other forum[s]" (2008 Gennimi Aff. 3), is without merit, as Cargain and Clark were authorized by the Town Code to seek a permanent injunction restraining and enjoining Gennimi and her husband from further violations in addition to prosecuting them for such violations. *See* Town Code § 220-71(B) (providing that such penalties "shall be enforced by the Building Inspector and such deputy inspectors as may be appointed by the Town Board"); *id*. § 220-72(A) (providing that any violation of the Town's local zoning laws is "an offense, punishable by a fine and/or imprisonment in accordance with § 268 of the Town Law"[23]); *id.* § 220-73 (authorizing "the Town Board or any Town officer designated by said Town Board or the Building Inspector, in addition to other remedies, [to]

---

[23]  Under New York law governing the authority of local municipalities to enforce local laws, a town board may authorize enforcement of any ordinance enacted under the authority of Article 16 of the New York Town Law relating to the exercise of the zoning power by towns. *See* N.Y. Town Law § 261 (authorizing town boards to enact local laws or ordinances to "regulate . . . the . . . use of . . . land for trade, industry, residence, or other purposes"); *id.* § 268(1) (authorizing town boards to provide for enforcement of any local law or ordinance adopted under authority of New York Town Law).  Although granting town boards the authority to criminally enforce local zoning law, *see People v. Bacon*, 508 N.Y.S.2d 138, 139 (Dist. Ct. 1986) (where town opts to enforce local zoning ordinance by prosecution rather than mandatory injunction, "the People must meet all the burdens placed upon them in a criminal proceeding, including the burden of proving all elements of the offense beyond a reasonable doubt"), New York law places limits on the extent of punishment, *see People v. Fells*, 505 N.Y.S.2d 751, 755 (J. Ct. 1986) ("In prosecuting violations of a zoning law, Town Law § 268(1) provides that such violations for the purpose of prosecution be classified as misdemeanors.").

institute any appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance or use" of any "building, structure or land").

### d.    Malice

Having concluded that Cargain and Margaret Clark acted reasonably when they initiated the proceedings against Gennimi, it follows naturally that Gennimi also failed to establish the "malice" element of her malicious prosecution claims against them.  "Malice in this context does not have to be actual spite or hatred; it means only 'that the defendant must have commenced the . . . proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  *Oparaji v. City of New York*, No. 96-CV-6233, 1997 U.S. Dist. LEXIS 23686, at *5 (S.D.N.Y. Mar. 21, 1997) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)).  Upon review of the evidence, there are no facts from which a reasonable juror could infer that Cargain or Clark acted due to a wrong or improper motive.  To the contrary, the record establishes that Cargain and Clark acted reasonably in response to a series of complaints about conduct occurring on the Gennimi Property for an extended period of time, conducting an investigation, citing Gennimi for violations of the Town's Zoning Laws and Wetlands Laws, and ultimately commencing proceedings against Gennimi when she continued to disregard said laws and orders to remedy violations.  *See Oparaji*, 1997 U.S. Dist. LEXIS 23686, at *5-7 (malice element not satisfied where defendant police officers acted reasonably in response to civilian complaint regarding unlawful destruction of property by conducting an investigation, obtaining an arrest warrant, and arresting plaintiff).  Accordingly, Gennimi's malicious prosecutions claims are dismissed.

2.      **Federal Conspiracy Claims**

In the Complaint, Gennimi alleges that the Private Defendants conspired with Margaret Clark, Cargain, Barrett, Fain, the Planning Board, and the Planning Board Members by (1) "repeatedly exhorting the town officials to prosecute Gennimi for purported wetland violations;" (2) "causing Gennimi to be prosecuted and convicted of wetland violations and fined $1,500 and $25,000;" and (3) "engaging in a continuous harassment campaign against Gennimi and her family from 2000 to the present" in an effort "to drive them out of town." (Compl. ¶¶ 290, 293.) Gennimi further argues that Defendants' actions were racially motivated (*id*. ¶¶ 291, 295), and she invokes "42 U.S.C. 1981, et seq." as the legal foundation for her conspiracy claims (*id*. ¶¶ 290, 293). Like the Magistrate Judge, I will construe these vague pleadings to assert claims for relief under 42 U.S.C. §§ 1981, 1983, and 1985.

a.      **Conspiracy to Violate a Federal Right (42 U.S.C. § 1983)**

Although entirely unclear from the Complaint, Gennimi's memorandum of law in support of her objections indicates that she intends her conspiracy claims under Section 1983 to be premised on "the violation of [her] First Amendment right of access to the federal courts and her Fourth Amendment rights against the Town's unjustified searches and surveillance to drum up charges of commerical activities to support malicious prosecution in conspiracy with private defendants."[24] (Gennimi's Objs. 25.) Viewed through this lens, it is clear that Gennimi's Section 1983 conspiracy claims must be dismissed against all Defendants, because a claim of conspiracy to violate a constitutional right cannot be maintained where no constitutional right

---

[24] As previously discussed, Gennimi's claims are precluded to the extent they are premised on conduct occurring prior to the filing of the last amended complaint in Manbeck I. *See* Part II.B.

was violated.  *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("[A]lthough the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right."); *Richardson*, 2009 U.S. Dist. LEXIS 25247, at *48-49 ("[T]o succeed in a Section 1983 conspiracy claim, a plaintiff must prove not only a conspiracy, but an actual deprivation of a constitutional right." (alteration in original)).

Even if Gennimi had established the violation of a federal right, her claims must be dismissed against the Private Defendants for failure to satisfy the "state-action" element of a claim under Section 1983, which, like the state-action requirement of the Fourteenth Amendment, "excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999 (internal quotation marks omitted)).  Under Section 1983, a private party's conduct constitutes state action

> when there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.  That nexus may exist where a private actor has operated as a willful participant in joint activity with the State or its agents, or acts together with state officials or with significant state aid.

*Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (internal citations and quotation marks omitted).  "While [this] determination is necessarily a fact-bound inquiry which requires sifting facts and weighing circumstances unique to each case, the Supreme Court has identified a host of factors that can bear on state action."  *Forbes v. City of New York*, No. 05-CV-7331, 2008 U.S. Dist. LEXIS 63021, at *10 (S.D.N.Y. Aug. 12, 2008) (internal citations and quotation marks omitted).  Among these factors is the existence of joint action between the private actors and state actors, the touchstone of which is a "plan, prearrangement, conspiracy, custom, or

policy" shared by the private actor and the state actor, *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999), and which the Supreme Court has explained through the concept of a "meeting of the minds" between law enforcement and private individuals, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *see Chodkowski v. City of New York*, No. 06-CV-7120, 2007 U.S. Dist. LEXIS 67822, at *32 (S.D.N.Y. Sept. 11, 2007) ("meeting of the minds" necessary for "independent acts of two or more wrongdoers" to amount to a conspiracy).

The Magistrate Judge recommended that Gennimi's Section 1983 claims be dismissed against the Private Defendants on the grounds that she failed to establish such a meeting of the minds, reasoning that "[e]vidence that defendants spoke with Town officials and complained about [Gennimi's] conduct to Town officials is not by itself adequate evidence of a conspiracy." (R&R 21.)  I agree, because although "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence," *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999), "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed," *Richardson*, 2009 U.S. Dist. LEXIS 25247, at *49 (internal quotation marks omitted); *see Chodkowski*, 2007 U.S. Dist. LEXIS 67822, at *32 ("Naked assertions are insufficient . . . Rather, [t]he pleadings must present specific facts tending to show an agreement and concerted action."  (alteration in original) (internal citations and quotation marks omitted)).

Here, Gennimi has alleged nothing to demonstrate that the Private Defendants and the Town Defendants had a "meeting of the minds" the goal of which was to deprive Gennimi of her constitutional rights.  To the contrary, the record establishes that the Private Defendants were

often frustrated with what they believed to be the Town Defendants' failure to prevent further commercial activity and construction on the Gennimi Property. For example, the Mickas complained to the Planning Board in January 2003, that the "past four years" living next to Gennimi had been "misery" because of the continued presence of "junk and building materials" on the Gennimi Property (2007 Gennimi Aff. Ex. E), and an anonymous "Concerned Resident" letter dated November 10, 2004, which Gennimi attributes to the Mickas (Compl. ¶ 117), states "I cannot believe that the [Gennimi] house has remained in such unfinished state for so long . . . . How can he be permitted to [do additional renovations] when the roof is still incomplete . . . . We have been looking at these conditions for at least the past 3-4 years," (2007 Gennimi Aff. Ex. H).

The Private Defendants would only continue to express frustration with the Town's response to their complaints in the coming years. For instance, in a letter dated March 22, 2006, Kathy Weingarten wrote to Cargain to complain that "nothing seems to be enforced by our town whatsoever," and to implore him to "stop all illegal activity, and enforce the building stop order and collect any fines due," as Gennimi's husband is a "bully" that "needs to be stopped." (*Id.* Ex. O.) Weingarten then called the Planning Board on November 6, 2006, to express that she was "very frustrated" with the "situation" at the Gennimi Property, believing that Gennimi's husband had erected a wall for the purpose of hiding stones used for his landscaping business. (2008 Gennimi Aff. Ex. W-2.) Perhaps most contradictory to the existence of any meeting of the minds between the Private Defendants and Town officials is the evidence that two anonymous callers, alleged by Gennimi to be Paul Taft and Kathy Weingarten (*id.* ¶ 8), called the Planning Board office on November 9, 2006, to express their "extreme frustration" and complain "that

44

there was *favoritism* . . . being shown" to Gennimi and her husband, as "the Town's Wetland

Inspector was requiring everyone but these homeowners to comply with the wetland law" (*id*.

Ex. W-2 (emphasis added)).

The existence a meeting of the minds between the Private Defendants and Town officials

is further belied by the candor exhibited in Cargain's inspection reports of the instances when he

visited the Gennimi site and did not observe any violations of the Town's Zoning Laws and

Wetlands Laws.  (*See* 2007 Gennimi Aff. Exs. P ("[n]o trucks or equipment on site"), Q ("no

evidence of contractor storage of landscaping equipment").)  If there truly was a conspiracy

between the Private Defendants and Cargain with the object of framing Gennimi for violations of

the Town's Zoning Laws and Wetlands Laws, then Cargain could have just as easily fabricated

his inspection reports.  Indeed, rather than hiding his participation in the July 15, 2005 meeting

with the Private Defendants to discuss their complaints – as might reasonably be expected of a

backroom conspiracy – Cargain drafted an incident report noting that the participants "discussed

the issues and how to address them." (2008 Gennimi Aff. Ex. W-7.)  Moreover, to the extent that

Gennimi would have the Court infer that Cargain conspired with the Private Defendants at the

July 15, 2005 meeting to post a stop work order and to have the Private Defendants collect

additional information against Gennimi, this argument is contradicted by the record.  It is clear

that Cargain only posted a new stop work order because he learned at the meeting that the

previous stop work order was no longer posted on Gennimi's garage door, and he only advised

the Private Defendants on how to legally document their complaints as interested third parties

because he refused to adopt their observations as his own without first conducting an

independent investigation.  (Cargain Dep. 305:13-309:8 ("I told the [Private Defendants] that I

couldn't stand for [them] . . . I can only take it as a complaint and I have to do my own investigation.").)  Gennimi, having failed to establish a conspiracy between the Private Defendants and state actors to violate her rights, her claims against the Private Defendants must be dismissed.

Gennimi objects to this conclusion, arguing that the Private Defendants are liable under the "joint engagement" theory of liability articulated in *Weintraub v. Bd. of Educ. of City of N.Y.*, 423 F. Supp. 2d 38, 57 (E.D.N.Y. 2006).  But *Weintraub* merely stands for the principle that "[t]he formal requirements of a conspiracy" are not necessary to hold a private actor liable under Section 1983 where the plaintiff produces evidence that the private actor made false statements to state actors for the purpose of "invoking the state's power to intentionally violate a citizen's constitutional rights." *Id*. at 57-58; *see Chodkowski*, 2007 U.S. Dist. LEXIS 67822, at *28-29 (distinguishing *Weintraub* as limited to situation where "the plaintiff alleged prior incidents that demonstrated a longstanding vendetta against the plaintiff, which allowed the court to infer potential bad faith").  This exception does not, however, disturb the general rule that providing information to the police – even if the information turns out to be false – "will not suffice to convert a private party into a state actor under § 1983." *Chodkowski*, 2007 U.S. Dist. LEXIS 67822, at *29; *see Ginsberg*, 189 F.3d at 272 ("Where . . . a police officer exercises independent judgment in how to respond to a private party's legitimate request for assistance, the private party is not 'jointly engaged' in the officer's conduct so as to render it a state actor under Section 1983."); *Mione v. McGrath*, 435 F. Supp. 2d 266, 272 (S.D.N.Y. 2006) ("Courts in the Second Circuit have repeatedly ruled that contacting the police to alert them to a potential or alleged crime falls short of § 1983's state action requirement."); *Johns v. Home Depot U.S.A., Inc.*, 221

F.R.D. 400, 405 (S.D.N.Y. 2004) ("Where a private person merely seeks the assistance of the police to quell a disturbance, the private party is not 'jointly engaged' in the police officer's conduct so as to render it a state actor under § 1983." (internal quotation marks omitted)).

Thus, Gennimi's reliance on *Weintraub* is misplaced, as the record reveals no more than a series of complaints lodged by the Private Defendants concerning what they legitimately perceived to be violations of the Town's Wetlands Laws and Zoning Laws that impaired the use and enjoyment of their neighboring property.  Regardless of whether the complained-of activity on the Gennimi Property was actually in violation of the Town's local laws (and there is ample reason to believe that it was), and whether the Private Defendants and Gennimi dislike each other (which they undoubtedly do), there is no evidence that the Private Defendants ever intentionally provided false information to Town officials.  Thus, Gennimi has failed to establish the bad faith necessary to elevate the Private Defendants' complaints from the griping of annoyed neighbors to state action resulting in the deprivation of constitutional rights.  *Compare Levy*, 47 F. Supp. 2d at 490-92 (dismissing claims against defendant in ongoing dispute "between two not-so-friendly neighbors" on grounds that defendant had First Amendment right to lodge complaint regarding plaintiff's violation of local zoning law "forcefully . . . repeatedly . . . and with people she thought would assist her"); *and Serbalik v. Gray*, 27 F. Supp. 2d 127, 130-33 (N.D.N.Y 1998) (dismissing claims against defendant in "continuing saga between neighbors" where defendant "merely elicited the aid" of local officials on separate occasions, first "to remedy a potentially malfunctioning septic system and preserve the ecological well-being" of a lake, and then "to prevent [the] plaintiff from further damaging her [property]"); *with Weintraub*, 423 F. Supp. 2d at 58 (denying private actors' motion for judgment as a matter of

law where genuinely disputed facts existed whether complaints that plaintiff teacher used corporal punishment in classroom, sexually abused students, and assaulted fellow teacher were fabricated to have plaintiff falsely arrested); *and Coakley*, 49 F.Supp.2d at 620, 623-24 (denying motion to dismiss claims against private actors under § 1983 where they manipulated evidence presented to assistant district attorney leading to arrest and prosecution of plaintiffs).  There being no such evidence of bad faith here, and Gennimi having failed to establish the "meeting of the minds" necessary to qualify the Private Defendants as state actors under Section 1983, Gennimi's claims against the Private Defendants must be dismissed.

**b.     Race-Based Conspiracy (42 U.S.C. §§ 1981, 1985)**

In addition to her claims under Sections 1983, Gennimi claims that the Private Defendants conspired with the Town Defendants to "drive her and her family out of town on the basis of their race" in violation of 42 U.S.C. §§ 1981 and 1985.  (Compl. ¶¶ 291, 295.)  Gennimi claims that the Private Defendants' complaints have intensified since her daughter's birth on May 26, 2006, "as Hispanic families are believed to be large and are feared by white neighbors to burden the school system."  (*Id.* ¶ 138.)

Section 1981 "prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, [and it] covers . . . efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 167, 177 (1989)).

> A § 1981 claim requires plaintiff to allege: (1) that he is a member of a racial minority; (2) that defendants had an intent to discriminate against him on the basis of race; and (3) that the discrimination concerned one or more of the

activities enumerated in the statute, namely make and enforce contracts, sue
and be sued, give evidence, etc.

*Mione*, 435 F. Supp. 2d at 271.  "In  a conspiracy claim under Section 1985, the plaintiff must

prove not only that a conspiracy existed, but also that the conspiracy was 'motivated by some

racial or perhaps otherwise class-based, invidious discriminatory animus behind the

conspirators' action.'"  *Richardson*, 2009 U.S. Dist. LEXIS 25247, at *49-50 (quoting *Mian*, 7

F.3d at 1087).  In other words, a Section 1985 conspiracy differs from a Section 1983 conspiracy

in that the plaintiff must also "provide evidence that Defendants acted in concert with a racial or

discriminatory animus."  *Id*. at *51; *see Mione*, 435 F. Supp. 2d at 271 (Section 1985 conspiracy

claim "[n]arrower in scope than § 1983" claim).

       In the R&R, the Magistrate Judge recommended that Gennimi's race-based federal

conspiracy claims against the Private Defendants be dismissed, as "there are no facts in the

record which support [P]laintiff's allegations of a conspiracy, let alone a conspiracy motivated

by racial animus."[25]  (R&R 22.)  Gennimi objects, arguing that she identifies herself as Hispanic,

that the Private Defendants have "waged a campaign of harassment against [her]," and that her

affidavits provide evidence that she has been subjected "to insults and racial epithets by [the]

[P]rivate [D]efendants since 2002."  (Gennimi's Objs. 26, 28.)  Upon review of the record, I find

that the evidence does not support Gennimi's allegations of a race-based conspiracy.

---

[25]  As previously discussed, Gennimi's race-based conspiracy claims against the Town
Defendants and the Fain Defendants are precluded under the doctrines of res judicata and
collateral estoppel, as the Manbeck I R&R disposed of her claims against said Defendants under
Sections 1981 and 1985, and the alleged evidence of racial animus is based on conduct which
occurred prior to – and thus should have been included in – the filing of the last amended
complaint in that action.  Nonetheless, even if such claims were not precluded, they must be
dismissed for the same reasons as the race-based conspiracy claims against the Private
Defendants.

Gennimi relies heavily on a June 7, 2004 letter to the Planning Board, signed by a number of Gennimi's neighbors, including the Mickas and the Weingartens, in which these individuals complain about the "many transient workers" in Mr. Gennimi's employ "who come and go at all hours of the day," causing the neighbors to have "concern for the safety of [their] children." (2007 Gennimi Aff. Ex. H.) Gennimi would have the Court believe that the reference to "transient workers" is evidence of a race-based conspiracy to run her out of town. I agree with the Magistrate Judge that the reference to "transient workers" does not give rise to a plausible inference of racially discriminatory intent (R&R 21), as its plain meaning is simply an individual who is not engaged in continuous employment by a single employer. *See Cossack v. Burns*, 970 F. Supp. 108, 116 (N.D.N.Y. 1997) (using term in context of employee pension rights under union contract). It would thus be unreasonable to interpret the June 7, 2004 letter to be anything more than a laundry list of activity by which a neighbor might reasonably be annoyed, including the use of the Gennimi Property "as a dumping ground for materials, Belgium blocks, boulders, trees, shrubs, and topsoil," the frequent presence of "large trucks with huge amounts of backfill," and the aforementioned traffic of workers to and from the Gennimi Property. (2007 Gennimi Aff. Ex. H.) Indeed, nonparty Town Police Chief Drew Marchiano, on whose deposition Gennimi relies as proof of a conspiracy between the Private Defendants and Cargain (*see* Pls.' Opp'n to Town Defs. Mot. to Dismiss 12-14), testified that the issue of ethnicity was never raised at a meeting he attended along with the Private Defendants and Cargain in March 2006 concerning the above activity, which was still ongoing at that time. (Marchiano Dep. 74:12-25 (complaints limited to "the way the workers drive in and out [of the Gennimi Property]

and that kind of thing," no mention whatsoever of "workers speaking Spanish or being day laborers").)

In addition to the "transient worker" letter, the record is replete with examples of Gennimi's mischaracterizations of the evidence in an effort to manufacture a racial motive.  For example, Gennimi argues that "[o]n April 21, 2005[,] Eugene Micka called the police to complain about *loud Spanish music* being played at the house" (Compl. ¶ 119; 2008 Gennimi Aff. ¶ 2; Pls.' 56.1 ¶ 17 (emphasis added)), but the police incident report she cites in support of her allegation states merely that an unidentified person placed "a report of *loud music*" at the Gennimi Property at 7:00 p.m. on a Thursday evening, and that the police officer arriving at the scene discovered Gennimi's husband with "music playing in his pickup truck while working in the driveway" (2008 Gennimi Aff. Ex. W-1A (emphasis added)).  The Complaint also alleges that Kathy Weingarten contacted the police and Town officials on several occasions to report that five to six men, including Gennimi's husband, were acting suspiciously on the property of Ms. Monte, Gennimi's "elderly . . . Hispanic friend."  (Compl. ¶¶ 128, 130, 131.)  But Gennimi has failed to offer any evidence that Monte is Hispanic,[26] and, even if she is, that does not somehow make Weingarten's report racially motivated.

As for Gennimi's uncorroborated recollection of instances when she and her family were allegedly referred to as "you people" (*see*, *e.g.*, 2007 Gennimi Aff. ¶¶ 2 (alleging that Tracy Taft said, "Wendy, get yourself and your dog away from my property or else I am calling the dog warden, and police on *you people*" (emphasis in original)), 31 (alleging that Tracy Taft told

---

[26]  Although inadmissible as evidence and irrelevant for present purposes, a local newspaper article submitted by the Weingartens provides reason to believe that Ms. Monte was in fact Italian.  (*See Obituaries: Angelina Monte, 97, Longtime South Salem Resident*, The Lewisboro Ledger, June 8, 2006, attached as Ex. I to the Weingarten Defs. Reply.)

Gennimi's husband "*you people* should go back to the gutter where you belong" (emphasis in original)), "there is insufficient evidence from which a reasonable fact finder could conclude that the question was laced with racial innuendo," as opposed to simply referring to Gennimi and her family collectively, albeit with hostility.  *Feacher v. Intercont'l Hotels Group*, 563 F. Supp. 2d 389, 404 (N.D.N.Y. 2008) (hostess's question "What do you people want here?" insufficient evidence that plaintiffs were treated in discriminatory manner by being seated in back of restaurant); *Big Apple Tire, Inc. v. Telesector Res. Group, Inc.*, 476 F. Supp. 2d 314, 327 (S.D.N.Y. 2007) (dismissing discriminatory termination claim on grounds that "racially-ambiguous, sporadic remarks" such as "you people" and "you fucking guys" are insufficient evidence of race discrimination or harassment).  This conclusion is particularly appropriate here, as there is no evidence that Gennimi's husband, Victor Schliman, is Hispanic.  Finally, if Gennimi would like the Court to infer anti-Hispanic animus from the fact that her husband was "walking . . . a tiny Chihuahua"[27] at the time that Tracy Taft allegedly told him to "go back to the gutter" (2007 Gennimi Aff. ¶ 31), the Court declines the invitation.[28]

---

[27]  The Chihuahua breed derives its name from the Mexican State of Chihuahua, where the earliest specimens were found.  *See* American Kennel Club, AKC Meet the Breeds: Chihuahua, http://www.akc.org/breeds/chihuahua/ (last visited July 26, 2009).  In the late 1990's, the recently deceased animal actor Gidget played a talking Chihuahua that became a popular advertising symbol for the fast food franchise Taco Bell.  *See Taco Bell Spokesdog Gidget Dies at 15*, PeoplePets, July 22, 2009; *Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137,  (9th Cir. 2009) (noting that Taco Bell's former advertising agency "created and broadcast over forty . . . Chihuahua commercials between January 1998 and June 2000").  More recently, the breed has become known as a fashionable purse-dog for the likes of Paris Hilton and the fictional Elle Woods of the *Legally Blonde* films (in the second of which Gidget played the mother of Elle's dog Bruiser).  *See* Oliver Jones, *From Tinkerbell to Taco Bell: A Chihuahua History*, People, Oct. 16, 2008.

[28]  The only unequivocally racially charged statement alleged in Gennimi's affidavits are attributed to Gennimi's neighbor Orlando Ferrentini, a nonparty.  (*See* 2007 Gennimi Aff. ¶ 6 ("Ferrentini has since 2001 called the town officials, including the police, numerous times to

In sum, the evidence establishes merely that the Private Defendants were frustrated with the prolonged construction work and purported operation of a landscaping business on the Gennimi Property, and that they persistently petitioned Town officials in the hopes that they would intervene.  There being no evidence from which a reasonable fact finder could find a racial or discriminatory animus, such conduct cannot create liability under Sections 1981 and 1985.  *See Hardin v. Meridien Foods*, No. 98-CV-2268, 2001 U.S. Dist. LEXIS 15564, at *26 (S.D.N.Y. 2001) ("Naked assertion[s] by plaintiff[s] that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race [are] too conclusory . . . ." (alterations in original) (internal quotation marks omitted)).  As for Gennimi's argument that her conclusory assertions of racial motivation are sufficient to state a race-based conspiracy claim, her reliance on the unpublished opinion, *Wang v. Office of Prof'l Med. Conduct*, 228 F. App'x 17 (2d Cir. 2007), (*see* Pls.' Opp'n to Town Defs. Mot. to Dismiss 22), is misplaced, as that case merely stands for the principle that the failure to allege facts that would support a finding of discriminatory intent is not dispositve on a motion to dismiss.  *See Wang*, 228 F. App'x at 20 ("Although [the plaintiff] alleges no facts that would support a finding of discriminatory intent, he need not do so at the pleading stage.")  Whatever the continuing vitality of that case after *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (explaining that Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"), this is a motion for summary judgment.  Having had the opportunity to conduct extensive discovery over the course of this and the prior actions,

---

complain about me and has yelled racial epithets at me like, "*you Hispanic people . . . are a disgrace . . .*" (emphasis in original)).)  As Ferrentini was not named as a Defendant and the Private Defendants are not responsible for his actions, these allegations are irrelevant.

Gennimi's inability to produce evidence on which a reasonable jury could rely to return a verdict in her favor is fatal to her race-based conspiracy claims.

>     D.     STATE LAW CLAIMS

The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law causes of action (Counts Twenty-Two, Twenty-Three, Twenty-Five, Twenty-Seven, Twenty-Eight, and Twenty-Nine).  *See id.* (citing 28 U.S.C. § 1367(c)(3)).

## III.   CONCLUSION

The four years of litigation on these matters – involving three federal actions, extensive briefing and several opinions by Magistrate, District, and Circuit Judges – have absorbed extensive attorney time and judicial resources, not to mention the costs to the litigants, financial and otherwise.  These cases once again prove that, when it comes to disputes between neighbors, the wisdom of the popular expression "'[d]on't make a federal case out of it' . . . should be apparent."  *See Levy*, 47 F. Supp. 2d at 499.

For the foregoing reasons, the Court hereby adopts Magistrate Judge Yanthis's Report and Recommendation dated March 5, 2009, to the extent that it is consistent with this Order, and hereby **GRANTS** Defendants' motions for summary judgment and **DENIES** Plaintiffs' cross-

motions for summary judgment. All of Plaintiffs' federal claims against Defendants are
dismissed with prejudice. Plaintiffs' remaining state-law claims are dismissed without prejudice.

The Clerk of Court is respectfully directed to terminate the pending motions (Docs. 38,
39, 42, 43, 55, 57, 60, 62), and close the case.

Dated: July __30__, 2009
White Plains, New York

CATHY SEIBEL, U.S.D.J.

55